**In re the Marriage of Ramon G. MARTIN, Petitioner, Respondent,**

v.

**Sharon F. MARTIN, Appellant.**

**No. C2–84–1711.**

Court of Appeals of Minnesota.

March 19, 1985.

A.M. Keith, Dunlap, Keith, Finseth, Berndt & Sandberg, P.A., Rochester, for respondent.

James P. Ryan, Jr., Ryan & VanDerHeyden, St. Charles, for appellant.

Heard, considered and decided by LANSING, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

This appeal is from an order modifying the amount of child support provided in a dissolution decree, and crediting against support the obligor's monthly payments on a garage construction loan. We affirm.

## FACTS

Ramon and Sharon Martin were married in 1967, and divorced in January, 1982. There are two children of the marriage, both minors.

The judgment and decree set child support in the amount of $150 per month per child, and ordered Ramon to pay his wife temporary maintenance of $300 per month for seven years, or until her death or remarriage. It further provided that Sharon's remarriage would constitute a substantial change in circumstances justifying an automatic increase in child support to $225 per child.

The homestead was awarded to Sharon, but the loan taken to finance construction of the garage was in Ramon's name only. The parties agreed that he would retain sole responsibility for this obligation of $105.92 per month, while Sharon would allow him the use of the garage to store personal property. In August of 1982, however, Sharon denied him the use of the garage, claiming interference with the visitation schedule. They then agreed that he would remove the property, but continue to make the payments, which would be deducted from "alimony."

In April, 1983, Ramon moved for a reduction in child support and maintenance, claiming a decrease in his ability to pay, as well as in Sharon's needs. In August of that year, the court reduced maintenance to $150 per month, but left support at $300 monthly (total).

In December of 1983, Sharon remarried, terminating the maintenance obligation.

In February, 1984, Ramon again moved for a reduction in child support, based on a decrease in income, and also moved for a change in the payment of the garage loan. The trial court, after a hearing and submission of tax returns, ordered child support reduced to $135 per month, pursuant to the statutory guidelines, and ordered that amount reduced by one-half of the monthly garage loan payment, or $52.96. Net monthly child support, therefore, was set at $82.04.

Ramon is an independent over-the-road truck driver entitled to business expense deductions for his meals and lodging while on the road. His net income, after these and other deductions and his income tax liability, was $26,034 in 1981, approximately $12,300 in 1982, and $7,747 in 1983. Sharon challenges the deduction of these expenses in determining income from which to set child support, claiming that they represent his "basic living needs," already accounted for under the statute. Minn.Stat. § 518.551, subd. 5(a)(2) (1984).

## ISSUES

1. Did the trial court err in its determination of Ramon Martin's net income for purposes of the statutory child support guidelines?

2. Did the trial court err in modifying the dissolution provision concerning "rental" of the garage by applying the one-half of the garage payment as a credit against child support?

## ANALYSIS

### 1. Determination of net income

■ This court has held that the statutory child support guidelines may be applied to support previously imposed if a substantial change in circumstances justifying a modification has been shown. *Hadrava v. Hadrava*, 357 N.W.2d 376, 379 (Minn.Ct. App.1984). The trial court found that Ramon's net income had been "substantially reduced."

■ Appellant conceded that there had been a reduction in gross earnings, but claimed that Ramon's figures for net income were misleading. Ramon's tax returns, however, do show a reduction in net income from $26,000 in 1981 to $7,747 in 1983. Even adding back the expenses disputed by Sharon would leave an approximate 50% reduction in income, certainly a substantial reduction justifying modification.

Appellant, however, contends that for purposes of application of the guidelines, Ramon's business deductions for food and lodging should be discounted, since these are the "basic living needs of the obligor" already taken into consideration by the guidelines. Minn.Stat. § 518.551, subd. 5(a)(2). Since consideration of these needs

reduces the percentage at which support is set, the traveling independent businessman such as Ramon, she argues, who can deduct these expenses in determining net income, receives a double benefit.

The guidelines definition of net income excludes only taxes, social security and other payroll-type deductions. There is no provision for business deductions, or expenses incurred in generating income. Minn.Stat. § 518.551, subd. 5 (1984). There are no cases interpreting the definition as applied to self-employed obligors. Such expenses have been recognized elsewhere, however. *Mangum v. Mangum,* 197 Neb. 350, 249 N.W.2d 207 (1977) (truck driver's annual gross earnings reduced by road expenses).

The explanatory section of the guidelines statute reads, in pertinent part, as follows:

    (a) The child support payment guidelines take into consideration the following criteria:

    (1) all earnings, income, and resources of the obligor including real and personal property;

    (2) the basic living needs of the obligor;

    (3) the financial needs of the child or children to be supported;

    \*    \*    \*    \*    \*    \*

    (d) Nothing shall preclude the court from receiving evidence on the above factors to determine if the guidelines should be exceeded or modified in a particular case.

    (e) The above guidelines are binding in each case unless the court makes express findings of fact as to the reason for departure below the guidelines in that case in which the court orders support that so deviates from the guidelines.

Minn.Stat. § 518.551, subd. 5 (1984).

■ There may be some duplication between business expenses which are deducted from the gross income of self-employed obligors to reach the net income figure on which child support is based, and the "basic living needs" of the obligor. Such duplication may be considered as a reason for upward departure from the guidelines, and evidence received on this factor as a grounds for such a departure.

■ Here the issue was presented to the trial court. Appellant claimed that Ramon's meals and lodging should not be deducted, at least without a discounting factor, because they were "everyday expenses" which wage earners would not be able to deduct. The trial court, however, in finding net income to be $645 per month, implicitly found that the full amounts claimed were properly deducted in arriving at net income, and ordered the support recommended by the guidelines. This refusal to depart from the guidelines was not an abuse of discretion. *See, Taylor v. Taylor,* 329 N.W.2d 795 (Minn.1983).

## 2. The garage loan

■ The judgment and decree included the following provision concerning the garage and garage loan:

The petitioner [Ramon] may store his personal property in the garage located on the property awarded to respondent above for so long as he pays the Note secured by said garage at the IBM Credit Union in the amount of approximately [$4,674.25]. The monthly payment on said Note is [$105.92] and shall be considered rent to respondent.

When Sharon terminated use of the garage, they agreed that the loan payment would be credited to Ramon's maintenance obligation. When Sharon remarried, maintenance ended, and Ramon deducted the payment from support.

The garage loan payment represents money expended on the homestead property, shelter for the children. It may be considered in the nature of child support, although the rental agreement incorporated into the dissolution decree casts it in the form of an exchange or business arrangement between the parents.

The garage "rental" agreement should not have been incorporated into the decree, as it represented a temporary arrangement only, foisting the parties upon each other

and prolonging marital strife. *Bogen v. Bogen*, 261 N.W.2d 606 (Minn.1977); *Johnson v. Johnson*, 284 Minn. 181, 169 N.W.2d 595 (1969). Given the agreement, however, it is inequitable for Sharon to deny Ramon the use of the garage without assuming the loan or otherwise compensating him. The trial court, considering the provision in the decree to be a property settlement, not subject to modification, ordered the offset against child support. *See*, Minn.Stat. § 518.64, subd. 2 (1984).

Although the statute does not specifically provide for it, the apportionment of the marital debts between the parties is a part of the property settlement. *Filkins v. Filkins*, 347 N.W.2d 526 (Minn.Ct.App.1984). The supreme court, however, has been willing to recognize as modifiable parts of property provisions which are more in the nature of maintenance or support. *See*, *Kerr v. Kerr*, 309 Minn. 124, 243 N.W.2d 313 (1976) (conditions for satisfaction of lien provided for security for child support were not part of property settlement).

The trial court properly characterized the garage loan payments as being in the nature of support, and the offset of those payments against the support payments ordered was not an abuse of discretion.

## DECISION

The trial court properly ordered a reduction in child support based on a substantial reduction in the obligor's net income. There was no abuse of discretion in refusing to depart from the guidelines by disregarding the business deductions for food and lodging. Nor did the court err in modifying the decree by giving respondent an offset against his child support obligation for the garage loan payments.

Affirmed.