In re the Marriage of Linda Pat
**PETTERSON, Appellant,**

v.

**David Alan PETTERSON, Respondent.**

**No. C5-84-1623.**

Court of Appeals of Minnesota.

April 30, 1985.

Austin D. Ditzler, Castor, Ditzler & Klukas, Chtd., Minneapolis, for appellant.

Alan C. Eidsness, Henson & Efron, P.A., Minneapolis, for respondent.

Heard, considered and decided by LESLIE, P.J., and SEDGWICK and RANDALL, JJ.

## OPINION

LESLIE, Judge.

Linda Petterson appeals from a judgment that dissolved her marriage to respondent David Petterson. The main issues at trial were: (1) the value of the homestead and of stock in a closely-held corporation, (2) whether certain real estate investments made by David during separation were marital property, and (3) Linda's request for $750 per month in permanent spousal maintenance. We affirm.

## FACTS

The parties were married on September 3, 1955. There are four adult children of their marriage. Linda Petterson commenced an action for dissolution and trial was held on December 6, 1983.

Both parties submitted evidence of the value of the homestead. Linda testified that the home was worth $109,000, the value placed on it by the appraisal of a real estate agent. David testified that the home was worth $135,000, the value set by a professional real estate appraiser. The trial court found the fair market value of the homestead was $135,000 and awarded the homestead to Linda.

David Petterson owns 15 percent of the stock of Art-O-Graph, Inc., a Minnesota corporation. The remaining 85 percent is owned by one other shareholder. David testified that any sale of his stock would be controlled by a buy-sell agreement which sets the value of that stock at $57,000. A promissory note from David to Art-O-Graph reduces the net value of his interest by $12,500.

Linda Petterson called a certified public accountant to value the Art-O-Graph stock. He testified, based on an "income extreme projection" of Art-O-Graph's earnings, that David's 15 percent interest was worth $80,000. On cross-examination, the accountant testified that the buy-sell agreement would

control any transfer of David's stock. The trial court found the net value of David's interest in Art-O-Graph was $45,400.

David Petterson made investments after his separation from Linda and before trial. These investments (INVESPRO II and INVESPRO SF) were made with David's savings and with loans from banks and from Art-O-Graph. The trial court found the investments had a net value of $55,000. David argued that he should be awarded the investments because he had contributed to their acquisition.

The trial court made an almost equal division of the assets of the parties: Linda received the homestead and other property with a total value of $267,576.96; David received property valued at $270,974.64, including the Art-O-Graph stock and the INVESPRO II and INVESPRO SF. The trial court also ordered David to pay $3,000 in attorney fees to Linda.

The trial court denied Linda's request for $750 per month in permanent spousal maintenance because it found that she did not meet the criteria of Minn.Stat. § 518.522 (1982).

### ISSUES

1. Did the trial court err in valuing the homestead and stock in a closely-held corporation?

2. Did the trial court make an equitable division of the marital property?

3. Did the trial court err when it denied permanent spousal maintenance?

### ANALYSIS

#### 1. *Property Values*

A trial court has broad discretion in the valuation of marital property and an appellate court will not overturn the trial court's valuation of assets unless it is clearly erroneous. *Bogen v. Bogen,* 261 N.W.2d 606 (Minn.1977); Minn.R.Civ.P. 52.01. "(T)he market valuation determined by the trier of fact should be sustained if it falls within the limits of credible estimates made by competent witnesses * * * ". *Lammi v. Lammi,* 348 N.W.2d 372, 374 (Minn.Ct.

App.1984), *quoting, Hertz v. Hertz,* 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975).

#### *The Homestead*

■ The evidence of market value at trial included professional appraisals and the testimony of the parties. Linda Petterson submitted a market analysis prepared in 1982 by Burnet Realty which valued the homestead at $109,000. David Petterson submitted a professional appraisal from Appraisal Valuation Analysts, Inc. that valued the homestead at $135,000. David testified that the county had assessed the homestead at $110,000 for property tax purposes.

The trial court thus had three different estimates of the value of the homestead. The court apparently accepted the professional appraisal as more accurate and found the value of the homestead to be $135,000. Under *Hertz* and *Lammi* we must affirm that finding because it falls within the limits of credible estimates made by competent witnesses. The trial court's decision to accept a value at the upper limit of the estimates was within its broad discretion.

#### *The Art-O-Graph Stock*

■ The leading case on the valuation of stock in a closely-held corporation for purposes of a property settlement is *Rogers v. Rogers,* 296 N.W.2d 849 (Minn.1980). The issue in *Rogers* was the proper method of valuing an 85 percent interest in a Subchapter S corporation. The husband contended that a buy-sell agreement set the value of his shares at $254,000. The wife's expert, a certified public accountant, testified that the husband's interest in the business was worth $746,826. The trial court found the husband's interest in the corporation was worth $600,000. *Id.* at 850–1.

On appeal, the Minnesota Supreme Court discussed competing methods of valuation. The court held that the buy-sell agreement was not dispositive because the husband, as 85 percent owner, had a controlling interest and could modify that agreement. The court also noted the possibility that the assets of the corporation could be sold and the corporation dissolved, but the court did

not accept the expert testimony of the accountant which it severely criticized. *Id.* at 852–3.

The court reversed the trial court's finding and remanded the case with instructions on the valuation of the husband's business interest:

> We commonly accord substantial deference to the findings of the trial court and recognize that in a matter such as this exactitude is not possible. In these circumstances, however, we believe that certain considerations should be taken into account in formulating an award that would give to respondent her fair share of the value of the business appellant built during their marriage but at the same time would not overvalue the business in light of the contingencies to which it is subject.
>
> *We also believe that the buy-sell agreement, while not dispositive as to value, should be considered in determining the form of the award.* Although, as respondent points out, it is speculative that appellant might die or become disabled before he realizes the full value of his interest in RFA, it would seem unfair to award respondent a fixed amount based upon the most optimistic appraisal of the circumstances. *It would be more appropriate, we believe, to make a present award to respondent of her share of the $254,000 purchase price set by the buy-sell agreement, which represents the minimum appellant will realize on his stock.*

*Id.* at 853–4 (emphasis added).

David Petterson has a minority, 15 percent interest in Art-O-Graph. David testified that a buy-sell agreement sets the price at which he could sell his interest at $57,900 and only allows a sale back to the corporation. There is apparently no other market for David's stock and there was no evidence before the trial court that the buy-sell agreement could be modified. Linda Petterson's expert, Mr. Karnowski, set the value of David's business interest at $80,000 based on an "income extreme projection". But on cross-examination Karnowski testified that in choosing a capitalization rate he did not compare Art-O-Graph to other similar companies, that he did not discount the value of David's interest because of his minority position or because of the nonmarketability of that interest, and that the buy-sell agreement would control any sale of David's stock. Based on this evidence and on the holding in *Rogers*, we conclude that the trial court properly found that David's interest in Art-O-Graph had a net value of $45,000, the price set by the buy-sell agreement less an outstanding promissory note.

### 2. *Property Division*

■■■ Linda Petterson also contends that the property division was inequitable because the court found that David's investments during separation in INVESPRO II and INVESPRO SF were non-marital property. We find no merit in this claim. The mere fact that David was awarded these assets does not give rise to an inference that the assets were non-marital property. Minn.Stat. § 518.54 subd. 5 (1982). The trial court awarded the investments to David in the course of dividing the assets of the parties. The award to David was balanced by an award of equally valuable property (including the homestead) to Linda. We believe that the trial court's division of the marital property was fair and equitable within the bounds of discretion.

### 3. *Spousal Maintenance*

■■■ Linda Petterson contends that the trial court erred when it found that she did not meet the statutory criteria for an award of permanent spousal maintenance. The criteria are as follows:

> In a proceeding for dissolution of marriage * * * the court may grant a maintenance order for either spouse if it finds that the spouse seeking maintenance:
>
> (a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and
>
> (b) Is unable to adequately support himself after considering all relevant circumstances through appropriate employment or is the custodian of a child whose

condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home. Minn.Stat. § 518.522, subd. 1 (1982).

In two recent cases the supreme court addressed this issue. *McClelland v. McClelland*, 359 N.W.2d 7 (Minn.1984); *Abuzzahab v. Abuzzahab*, 359 N.W.2d 12 (Minn.1984). Those cases held that awards of permanent maintenance are restricted to certain exceptional cases where there is little likelihood that a once-dependent spouse will become self sufficient. The spouses in both cases had not worked during their 20-year marriages and had received substantial awards of marital property.

Linda Petterson is 52 years old and in good physical health. She holds a bachelor's degree in nursing and is currently employed as Director of Nursing at Camelia Rose Convalescent Center. Linda was employed either part-time or full-time for 15 of the 28 years of marriage. Her current monthly salary is $2,178.82; she also expects to receive between $5,000 and $7,000 per year in income from investments. The trial court awarded her property with a total value of $267,576.96. She has not requested temporary maintenance and did not request maintenance from David during separation.

We believe that the trial court properly denied permanent maintenance and correctly determined that this is not an exceptional case where permanent maintenance is warranted.

### DECISION

The trial court's decision on the value of the homestead and of David Petterson's interest in the closely-held corporation, on the division of marital property, and on the denial of permanent spousal maintenance is affirmed.