**In re the Marriage of Mary Lynette KEIL, Petitioner, Respondent,**

v.

**Kevin Michael KEIL, Appellant.**

**No. C4–86–306.**

Court of Appeals of Minnesota.

July 8, 1986.

J. Brian O'Leary, O'Leary & Moritz, Chartered, Springfield, for respondent.

John P. Guzik, Lawrence D. Olson & Assoc., St. Paul, for appellant.

Considered and decided by FORSBERG, P.J., and SEDGWICK and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Kevin Keil appeals from an order denying his motion to set his child support at a specific monthly amount, denying his motion to forgive child support arrearages, and denying in part his motion to deduct certain expenses from his gross income for purposes of determining child support. We affirm in part, reverse in part, and remand.

## FACTS

The marriage of appellant, Kevin Keil, and respondent, Mary Lang (formerly Mary Keil), was dissolved on May 4, 1984, by judgment based on the stipulation of the parties. Respondent was granted custody of the two minor children. Concerning child support, the decree states:

> [Kevin Keil] shall pay to [Mary Lang], child support pursuant to M.S.A. § 518.-551, subdivision 5.

The parties do not dispute that they agreed to this provision, which was based on appellant's seasonal employment as a road construction worker and on his resulting monthly variations in income. Appellant collects unemployment compensation and income from occasional odd jobs during the off season. The decree contains no findings concerning appellant's income.

1. Calculated according to the method previously

Appellant has paid $250 per month for support since judgment was entered. Judgments for arrearages were entered for $1,059 on January 29, 1985, and for $660 on February 20, 1986.

The first judgment for arrearages was based on an interpretation of the decree which set a monthly child support figure of $351 based on appellant's actual income for the past calendar year, $14,047 in 1984.

The second judgment for arrearages was based on a different interpretation of the decree. Appellant's income for each month of 1985 was multiplied by the guidelines percentage applicable to each month. The figures for twelve months totaled slightly over $3,600, for an average of $305 per month.[1] The judgment for arrearages was for the difference between the $250 per month actually paid, and the calculated obligation of $305 per month.

## ISSUES

1. Did the trial court abuse its discretion in refusing to set child support at a specific monthly figure based on net income?

2. Did the trial court abuse its discretion in refusing to forgive arrearages?

3. Did the trial court abuse its discretion in refusing to allow the obligor to deduct travel and food expenses from his gross income for child support purposes?

## ANALYSIS

### I.

*Child support figure*

Appellant moved the court to clarify the judgment by setting child support at a specific dollar amount. *See Stieler v. Stieler*, 244 Minn. 312, 319–20, 70 N.W.2d 127, 132 (1955) (clarification of ambiguous or uncertain judgment does not amount to an amendment of the judgment). We reverse and remand because the trial court erred by not setting child support at a specific amount.

used, support would have been $320 per month.

■ Minnesota case law favors child support awards based on specific calculations of net income. Even where calculation of disposable net income may be difficult, child support awards should be based on some calculation of income. *See Moylan v. Moylan,* 384 N.W.2d 859 (Minn.1986) A calculation of net income is necessary to allow calculation of guidelines child support. "The child support guidelines require the use of a net income figure which may be difficult to compute for self-employed persons." *Larson v. Larson,* 370 N.W.2d 40, 43 (Minn.Ct.App.1985). *Larson* reversed and remanded a child support award where the trial court's calculation of net income did not take into account all of the obligor's financial resources.

Even though *Moylan* holds that the guidelines are only one factor among several to be considered, the guidelines amount should still be calculated and used as a beginning reference point. *Moylan,* 384 N.W.2d at 863 ("the legislature intended that in nonpublic assistance child support cases courts should utilize the determined amounts set forth in the guidelines as starting points for the determination of child support awards.").

■ The fact that the trial court interpreted the decree two different ways in calculating arrearages demonstrates the uncertainty of the decree. We agree with appellant that public policy favors setting child support at a specific amount. Otherwise the obligation is difficult to enforce. Disputes are fostered between the parties over the amount of the obligor's net income, and it is difficult for both parties to plan their financial affairs. "Divorce decrees should be given that interpretation which will render them reasonable, effective, and conclusive." *Palmer v. Palmi,* 273 Minn. 97, 104, 140 N.W.2d 77, 82 (1966). Given this public policy, the trial court should have interpreted the vague and ambiguous language in the decree, when asked to do so, by setting definite and certain child support.

This is not a case where the facts mandate variable monthly support payments.

Once presented with the relevant documents, the trial court was able to calculate appellant's 1985 net income at $12,792. The trial court acknowledged in its memorandum that, based on appellant's 1985 income, the record supports setting child support at $305 per month. Current child support can have as a starting point the previous year's income. Either party can move for a modification if appellant's income changes substantially from the income figure on which the set monthly payment is based and if the movant can demonstrate changed circumstances under Minn.Stat. § 518.64 (1985).

## II.

*Arrearages*

The first judgment for arrearages was not appealed, and is, therefore, *res judicata* as to those arrearages. *Bledsoe v. Bledsoe,* 344 N.W.2d 892, 895 (Minn.Ct.App. 1984).

■ We affirm the trial court's refusal to forgive the second set of arrearages. The trial court has broad discretion to grant or deny a motion to forgive arrearages and will not be reversed absent an abuse of that discretion. *Bledsoe v. Bledsoe,* 344 N.W.2d 892, 895 (Minn.Ct.App.1984). A trial court will not forgive arrearages unless the failure to pay was not willful. *Egge v. Egge,* 361 N.W.2d 485, 489 (Minn.Ct.App. 1985). Here, the evidence supports the trial court's conclusion that appellant's failure to pay the full amount due was willful. The trial court had previously rejected Keil's argument that $250 per month was sufficient. The trial court had made it clear that appellant's interpretation, that the decree set a nonvariable monthly obligation based on his income in the month the decree was issued, was wrong.

## III.

*Deductions from gross income*

■ Appellant claims that the trial court abused its discretion by refusing to allow him, for purposes of calculating child sup-

port, deductions from income for travel and food expenses incurred while working at construction sites away from home. The trial court did allow him to deduct housing expenses incurred when working at a location more than 50 miles from his normal place of residence. Respondent does not appeal that portion of the order.

*Martin v. Martin*, 364 N.W.2d 475 (Minn.Ct.App.1985) holds that it was not an abuse of discretion to deduct the full cost of meals of a traveling sales representative. However, *Martin* also states that "duplication between business expenses which are deducted from the gross income of self-employed obligors to reach the net income figure * * * and the basic living needs of the obligor may be considered as a reason for upward departure from the guidelines." *Id.* at 478. Here, even if appellant had supplied documentation as to meals, it would not have been an abuse of discretion to include in net income the cost of some meals away from home as appellant would have at least some food expense regardless of his work site location.

Here, appellant presented no specific documentation as to food expense. He submitted only an assertion in his affidavit that in the past he has incurred $125–150 per week for food, travel and lodging when working away from home. No receipts or other documents were provided. The evidence does not show what portion of these expenses is food, what is travel, and what is lodging. While it was within the trial court's discretion to consider employee business expenses due to travel and meals, we will not disturb the court's decision to allow appellant a deduction for housing expenses but none for food. *See Isanti v. Formhals*, 358 N.W.2d 703 (Minn.Ct.App. 1984).

## DECISION

The trial court erred in refusing to clarify appellant's child support obligation. We remand for child support to be set at a specific dollar amount based on net income. The trial court did not abuse its discretion in refusing to forgive arrearages or in refusing to allow deductions for food expense.

**Affirmed in part, reversed in part, and remanded.**