In Re the Marriage of Christina Ann
BERENBERG, Petitioner,
Respondent,

v.

Danny Bob BERENBERG, Appellant.

No. CX–91–129.

Court of Appeals of Minnesota.

Sept. 10, 1991.

Review Denied Nov. 13, 1991.

844

Edward L. Winer, Moss & Barnett, Minneapolis, for respondent.

Robert F. Henson and Robert Bayer, Henson & Efron, P.A., Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and NORTON, and SHORT, JJ.

## OPINION

NORTON, Judge.

This is an appeal from a denial of a motion for amended findings or alternatively a new trial. Appellant's motion challenged the findings and conclusions of a July 2, 1990 amended judgment and decree of dissolution. We affirm.

## FACTS

The parties were married on September 10, 1977. At the time of the judgment and decree, their two minor children were ages eleven and five. Appellant was an attorney but had not practiced for many years because he had worked in the family's business during the marriage. Respondent had been a flight attendant prior to her marriage, but during the marriage had not worked outside the home.

Appellant and his parents are sole shareholders, except for a few shares gifted to appellant's minor son, in the Lincoln Dels Corporation (Dels) and the Lincoln Baking Corporation (Baking). Appellant's shares were acquired prior to his marriage. He owns 49.5% of the voting common stock and 69.57% of the non-voting common stock of Dels, and 36.36% of the non-voting common stock of Baking. Appellant's shares are subject to a voting trust agreement and a buy-sell agreement. Under the buy-sell agreement, appellant must offer his shares first to the corporation at a set formula price, then to the other shareholders at the same price and lastly to any interested third party. A third party cannot purchase the shares for less than the formula price and, in addition, would be bound by the buy-sell agreement. The formula price approximates the previous fiscal year's book value.

Throughout the parties' marriage, appellant acted as vice president and director of the corporations. Appellant was instrumental in building, establishing and managing the Lincoln Del South. Appellant's father was the ultimate decisionmaker and in control of the major decisions of the corporations. However, appellant held himself out as CEO during his father's absences and illnesses. Appellant is no longer a director or involved in the management of the corporations in any way.

The trial court adopted respondent's expert's valuations of Dels and Baking. The trial court determined the fair market value (FMV) of the corporations at the time of marriage by using values indicated on a gift tax return. The expert determined current FMV by using an adjusted book value; increasing the book value to reflect the current appraised value of assets, less any appreciation attributable to assets held at the time of marriage. The current FMV was discounted by 35% for nonmarketability and lack of control. The trial court found an increase in value in the shares held by appellant from the time of the marriage until the time of dissolution. The court ruled that appellant had failed to prove that this increased value was nonmarital property. The trial court found that the current value of appellant's Dels holdings was $1,813,865 with $994,507 attributable to appellant's nonmarital interest and $819,358 representing a marital asset. Also, the court found that the present market value of appellant's Baking holdings was $384,560 and attributed $225,720 of that to appellant's nonmarital interest and $158,840 to marital property. The court went on to divide the marital assets equally.

The court awarded child support of $600 per month to respondent plus 30% of all after tax net income that appellant receives from director's fees or receives from his law practice. The court also awarded respondent $400 a month in maintenance plus 20% of any after tax net income from appellant's director's fees and appellant's law practice. The court awarded respondent $30,000 in attorney fees.

## ISSUES

I. Was the trial court's property division an abuse of discretion?

A. Did the trial court err when it ruled that the increased value of appellant's

Dels and Baking holdings was marital property?

B. Were the trial court's valuations of Dels and Baking clearly erroneous?

C. Did the trial court err by refusing to apportion certain marital debts?

D. Did the trial court err by apportioning tax consequences to appellant?

E. Did the trial court err by failing to include certain insurance proceeds as a marital asset?

II. Did the trial court err by awarding respondent $30,000 in attorney fees?

III. Did the trial court err by failing to put a ceiling on the amount of child support and maintenance awarded?

IV. Is respondent entitled to attorney fees on appeal?

## ANALYSIS

Here, appellate review is limited to those matters alleged as error in appellant's motion for a new trial. *Iverson v. Iverson*, 432 N.W.2d 492, 493 (Minn.App.1988). A trial court's denial of a motion for a new trial will be reversed only for a clear abuse of discretion. *City of Ogema v. Bevins*, 341 N.W.2d 298, 299 (Minn.App.1983).

### I.

■ "[T]he court shall make a just and equitable division of the marital property of the parties." Minn.Stat. § 518.58 (1988). A trial court has broad discretion in determining a property division. *Stassen v. Stassen*, 351 N.W.2d 20, 23 (Minn.App. 1984).

### A.

Marital property means all property acquired by either party during the time of the marriage, and all property acquired by either spouse subsequent to the marriage is presumed to be marital. Minn.Stat. § 518.54, subd. 5 (1988).

The party seeking a nonmarital classification must show by a preponderance of the evidence that the asset is readily traceable to a nonmarital source.

*Hafner v. Hafner*, 406 N.W.2d 590, 593 (Minn.App.1987) (citation omitted).

■ First, appellant argues that he should not have the burden of proving that the increase in the value of his holdings was nonmarital because there is no question that his shares were acquired prior to his marriage. However, the issue is not when appellant acquired his stock in the businesses. The issue is whether the increase in the value of the stock during the marriage was marital or nonmarital. If there was an increase in the value of appellant's holdings during the marriage, this was property acquired during the marriage and appellant had the burden of showing that any increased value was nonmarital. *See id.*

[T]he increase in the value of nonmarital property attributable to the efforts of one or both spouses during their marriage * * * is marital property. Conversely, an increase in the value of nonmarital property attributable to inflation or to market forces or conditions, retains its nonmarital character.

*Nardini v. Nardini*, 414 N.W.2d 184, 192 (Minn.1987). "Whether property is marital or nonmarital is a question of law that this court may review with independent judgment." *Swick v. Swick*, 467 N.W.2d 328, 330 (Minn.App.1991) (citation omitted), *pet. for rev. denied* (Minn. May 16, 1991). However, the trial court's underlying findings of fact will only be set aside if they are clearly erroneous. *Id.*

■ The trial court ruled that the increased value of appellant's holdings was a marital asset. In support of this conclusion, the trial court found that appellant dedicated the majority of his time during the marriage to these enterprises, that he served as a vice president and director of the corporations and that he held himself out as chief executive officer.

Appellant argues that this case does not fall under the rule of *Nardini* but instead is controlled by *Duffey v. Duffey*, 416 N.W.2d 830 (Minn.App.1987), *pet. for rev. denied* (Minn. Feb. 24, 1988). In *Duffey*, the party arguing nonmarital interest owned a minority interest in seven closely held corporations owned by his family. *Id.*

at 831. There, the trial court found that the party arguing nonmarital interest was not involved in management decisions or in the operation of the company although he was an officer and director of several of the corporations. *Id.* at 832–33. This court declined to apply *Nardini* to *Duffey* saying:

> The distinguishing factor here is the retained earnings were *not* generated through the efforts of appellant or respondent. Thus, any increase in the value of respondent's stock due to retained earnings is nonmarital property.

*Id.* at 833.

However, this case is controlled by *Nardini.* Here, the evidence supports the trial court's findings that appellant's efforts contributed to the business. The trial court correctly ruled that the increased value in appellant's holdings was marital property.

■ Appellant also argues that in order for the appreciation to be marital, the closely held corporation must be controlled only by the married parties and appreciation cannot be attributable to any other shareholder. However, appellant's argument fails. Although the corporation in *Nardini* was owned only by the spouses, the rule stated in *Nardini* does not contain this limitation. *See Nardini,* 414 N.W.2d at 192. Further, where unrelated parties are owners of a closely held corporation, the value of a spouse's proportion of ownership has been held marital property. *See Lyon v. Lyon,* 439 N.W.2d 18, 20 (Minn.1989); *Rogers v. Rogers,* 296 N.W.2d 849 (Minn. 1980); *Petterson v. Petterson,* 366 N.W.App.1985) (treating part of spouses' interest in corporation closely-held by unrelated persons as marital interest).

### B.

A trial court has broad discretion in the valuation of marital property and an appellate court will not overturn the trial court's valuation of assets unless it is clearly erroneous.

*Petterson,* 366 N.W.2d at 687 (citation omitted). Further:

> [T]he establishment of a fair market value contemplates nothing more than the assignment of a fair and reasonable value to the family business as a whole to allow equitable apportionment of the marital property.

*Nardini,* 414 N.W.2d at 189.

■ Appellant argues that the trial court could not value the shares at anything above what the buy-sell agreement called for.

We have said that while a buy-sell agreement is not dispositive on value, the valuation of the stock "should in some way reflect the unique contingencies" of the transfer restrictions.

*Lyon,* 439 N.W.2d at 20 (citing *Rogers v. Rogers,* 296 N.W.2d 849, 852 (Minn.1980)). In *Lyon,* the supreme court held that the trial court did not abuse its discretion by choosing not to follow the buy-sell agreement value where the shareholders were free to modify the agreement and the present fair market value had been discounted substantially. *Id.*

Here, the trial court had evidence of a redemption by a previous family member that exceeded the value set by the buy-sell agreement. Further, the court discounted the present fair market value of the holdings by 35% to reflect the restrictions on appellant's ability to sell the shares and reflect his minority status. Therefore, the trial court's rejection of the buy-sell formula was not an abuse of discretion.

■ Appellant argues that adjusting the book value to reflect the value of the actual tangible assets here is inappropriate because the trial court would be unable to order a forced liquidation of the business. Appellant attempts to distinguish *Nardini* saying that the asset-based valuation approved of in *Nardini* was justified because the court had jurisdiction over both owners in that dissolution and could order a liquidation of the business. *See Nardini,* 414 N.W.2d at 189 (value of business cannot be less than what would be realized by forced sale of assets). Appellant argues that here, the business is owned by appellant and his parents, and the court could not order liquidation of the business.

However, *Nardini* applied the asset-based valuation to a buy-out, not a liquidation. Further, the trial court properly discounted the asset-based valuation to reflect the fact that appellant was not the sole owner. *See Lyon*, 439 N.W.2d at 20 (discount to reflect lack of control); *cf. Nardini*, 414 N.W.2d at 189 (error to apply discount where parties are sole owners). Therefore, the court's valuation was not clearly erroneous.

■ Appellant also argues that the trial court erred by choosing as a starting value, the value indicated in a gift tax return calculated near the time of the marriage rather than using book value at the time of marriage. Appellant argues that the gift tax return would not necessarily reflect FMV but would reflect appellant's father's interest in understating the value at that time. However, the determination of value for a gift tax return requires the same considerations that are stated in *Nardini. See Nardini*, 414 N.W.2d at 190 n. 3 (citing Rev. Rul. 59–60, 1959–1 C.B. 237). The trial court's beginning valuation based on the gift tax return and other statements of value near the time of the marriage was not clearly erroneous.

■ Next, appellant argues that Dels and Baking should not have been valued separately because this artificially created goodwill for Baking. However, the trial court received evidence that the corporations were separate and also received evidence of excess earnings resulting in goodwill for Baking. Whether or not an enterprise has goodwill is one of the factors to be considered when determining FMV. *Id.* at 190. The trial court did not err in valuing the entities separately and finding goodwill in its valuation of Baking.

■ Finally, appellant argues that the trial court erred because it failed to provide for the contingency that he might not receive any more than the buy-sell formula price if he sells his stock. He cites *Rogers* where the court did establish a contingency and explained that it would be unfair to value the shares at "the most optimistic appraisal." *Rogers*, 296 N.W.2d at 854. However, a trial court acts within its dis-cretion when it chooses not to apply a buy-sell price, but discounts the FMV. *Lyon*, 439 N.W.2d at 20. Here also, the court did not abuse its discretion, especially in light of the corporations' disregard of the buy-sell price when they earlier redeemed appellant's sister's shares.

### C.

■ A trial court's apportionment of marital debt is treated as a property division and reviewed under an abuse of discretion standard. *Justis v. Justis*, 384 N.W.2d 885, 888–89 (Minn.App.1986), *pet. for rev. denied* (Minn. May 29, 1986). A trial court is not required to apportion marital debts but is only required to meet the just and equitable standard of property divisions. *Id.*

Appellant argues that a $10,000 legal fee that was incurred trying to subdivide the homestead property should be apportioned as a marital debt because a successful division of the property could increase its value. However, respondent testified that she was not aware of and did not approve of the litigation. Appellant also argues that $39,244 of a $65,000 debt he owes to Baking should be apportioned as marital debt. However, testimony at trial indicated that part of this amount was incurred by appellant for his own personal expenses and the remainder was incurred after separation. The trial court did not abuse its discretion by refusing to apportion these debts.

### D.

■ After trial but before the judgment and decree were filed, appellant petitioned the trial court to use pension and profit-sharing funds to pay $50,000 in delinquent taxes. At the time of the order, the court realized that tax consequences and penalties would result from the withdrawal and reserved the issue of apportionment of the taxes and penalty. Later, in the amended judgment and decree, the court ruled that appellant would be responsible for the taxes and penalties.

Appellant argues it was error for the trial court to refuse to apportion the tax

consequences of the withdrawal or to at least increase his assets by the potential taxes. "It is within a court's discretion to consider the tax consequences of its actions." *Dahlberg v. Dahlberg*, 358 N.W.2d 76, 82 (Minn.App.1984) (citation omitted). Further:

> Even when tax consequences are "considered," the ultimate division of the assets, based on many factors in addition to taxes, remains within the trial court's discretion.

*O'Brien v. O'Brien*, 343 N.W.2d 850, 854 (Minn.1984). Appellant has failed to show that this apportionment resulted in an inequitable property division.

### E.

■ Appellant argues that the court should have reduced respondent's property by $2300 to represent her use of insurance proceeds from the loss of some jewelry. Respondent's use of the insurance proceeds was brought to the trial court's attention several times. The court's disregard of the proceeds was not an abuse of discretion. *See Griepp v. Griepp*, 381 N.W.2d 865, 869 (Minn.App.1986) (court may disregard depletions of marital assets prior to trial).

### II.

■ The judgment of attorney fees was filed on July 2, 1990. Therefore, Minn. Stat. § 518.14 (1988) applies. The 1988 statute allows a court to award attorney fees after considering the financial resources of the parties. The court's award of attorney fees is reviewed under an abuse of discretion standard. *Solon v. Solon*, 255 N.W.2d 395, 397 (Minn.1977).

The court found that respondent had costs and attorney fees exceeding $73,000 and found that the financial disparity between the parties justified an award of $30,000 in attorney fees. As respondent points out, appellant has more earning potential and has $1.3 million in nonmarital property. Under these circumstances, the award was not an abuse of discretion. *See Kohner v. Kohner*, 358 N.W.2d 721, 725 (Minn.App.1984), *pet. for rev. denied* (Minn. Feb. 27, 1985) (where one spouse has no independent means of support and the other spouse has $900,000 in assets, award of one-half of attorney fees was within court's discretion).

### III.

■ The court found respondent's and the parties' minor children's reasonable monthly expenses were $3000. Appellant does not challenge the trial court's findings or its awards of child support and maintenance. In his brief, appellant argued that the trial court erred by not indicating a maximum amount of his obligations. However, at oral argument, appellant's attorney stated that appellant no longer cared about these issues. Although, "public policy favors setting child support at a specific amount," *Keil v. Keil*, 390 N.W.2d 36, 38 (Minn.App.1986), the court's award under these circumstances was not an abuse of discretion. *See Novak v. Novak*, 406 N.W.2d 64, 68 (Minn.App.1987) (award of 35% of any bonuses received affirmed), *pet. for rev. denied* (Minn. July 22, 1987).

### IV.

■ Respondent requests attorney fees on appeal in the amount of $2500. She relies on Minn.Stat. § 518.14 (1990). Respondent has no income and is receiving $600 per month in child support. Both respondent and appellant were awarded over $800,000 in marital property. In addition, appellant's nonmarital property award was $1.3 million. Based on these facts, we award $2500 in attorney fees to respondent.

Affirmed.

SHORT, Judge (dissenting).

I respectfully dissent on the issue of appellant's shares of stock in his family's business. It is undisputed the shares of stock in Lincoln Enterprises were given to appellant by his parents before the parties' marriage. Although the trial court's characterization of assets and division of property is entitled to great weight, I believe the trial court abused its discretion in finding the appreciation in stock resulted from appellant's efforts. *See Duffey v. Duffey*,

416 N.W.2d 830, 832–33 (Minn.App.1987), *pet. for rev. denied* (Minn. Feb. 24, 1988). The record supports a finding of passive appreciation. I would therefore reverse, and award all appreciation in the shares of stock to appellant as a nonmarital asset.