*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1843**

In re the Marriage of: Lizhi Zhang, petitioner,
Respondent,

vs.

Zheng Fu,
Appellant

**Filed August 25, 2014
Affirmed in part, reversed in part, and remanded
Worke, Judge**

Olmsted County District Court
File No. 55-FA-11-4668

Steven C. Youngquist, Rochester, Minnesota (for respondent)

David W. VanDerHeyden, Rochester, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and

Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

In this marital dissolution matter, appellant challenges the district court's rulings

on spousal maintenance, division of property and debts, child support, valuation date, and

attorney fees. Respondent argues that the district court abused its discretion by failing to

order appellant to equally share in the costs of selling the homestead and in calculating

the equalization payment, and erred in calculating appellant's child-care costs. We affirm in part, reverse in part, and remand for further proceedings.

## FACTS

Appellant-wife Zheng Fu and respondent-husband Lizhi Zhang were married in May 2000 and have two minor children, J.Z. and D.Z. Both Fu and Zhang are highly educated: Fu has a PhD and performs research related to prostate cancer, and Zhang is a physician employed by the Mayo Clinic. Fu completed her PhD, and Zhang completed his residency and fellowship training during the marriage. Both parties made compromises to permit the other party to pursue educational and career goals.

Fu worked at the Mayo Clinic with a researcher who later moved to Yale University; she turned down an employment offer at Yale University to remain with her family. In 2010, Fu accepted a job offer from Virginia Commonwealth University (VCU) as an assistant professor, with tenure possible after 2016. Fu moved to Virginia with the parties' younger child, D.Z.

Zhang finished his residency and was hired as a staff pathologist by the Mayo Clinic in 2009. As a resident, Zhang was paid a fairly modest salary; as a staff physician, he started at $225,000 per year, with generous increases culminating in an expected top salary of $380,000 in 2014. Fu's starting salary at VCU was approximately $88,000 per year; the district court found that her monthly income at the time of the dissolution was $8,333, or approximately $100,000 per year. Fu receives medical, retirement, and other employment benefits.

2

In May 2011, Zhang petitioned for dissolution. At that time, D.Z. lived in Virginia with Fu and J.Z. lived with Zhang. In February 2012, Fu moved for temporary maintenance and child support. In May 2012, the district court ordered Zhang to pay temporary child support of $1,231 per month and temporary maintenance of $1,500 per month, retroactive to February 1, 2012.

Although custody was initially at issue, in May 2012 Zhang agreed to let both boys live with Fu in Virginia. Once J.Z. moved to Virginia, Zhang voluntarily increased the child support he was paying to $2,231 per month. In the final judgment and decree, the district court ordered Zhang to pay $4,322 per month as child support, a figure that is based on the child support guidelines and that includes child-care expenses. The district court found that Fu did not establish a need for spousal maintenance, "in light of the property settlement, her ability for self-support, and maximum child support." Zhang was ordered to pay an additional $924 per month for extracurricular expenses, which is a share proportionate to the parties' relative incomes. Zhang also was ordered to contribute $2,000 per month to the children's college fund.

The parties each now challenge the district court rulings made in the dissolution proceedings.

## DECISION

*Conceded issues*

Zhang concedes that the district court made an error in its calculation of the value of Fu's retirement accounts and that Fu should receive an additional $3,700 as an equalization payment. Fu does not object to sharing one-half of the costs related to the

3

sale of the homestead, so long as these costs do not include routine maintenance and repair. Based on these concessions, we reverse the district court's decisions as to these two issues and remand for correction by the district court.

*Spousal maintenance*

Fu argues that the district court's findings are clearly erroneous and that it abused its discretion by refusing to award her spousal maintenance. We review the district court's findings of fact for clear error and its maintenance decision for an abuse of discretion. *Maiers v. Maiers*, 775 N.W.2d 666, 668 (Minn. App. 2009); *see also* Minn. R. Civ. P. 52.01 (stating that district court's findings will not be set aside unless clearly erroneous). This court views the evidence in the light most favorable to the district court's findings and defers to the fact-finder's credibility determinations. *Robert v. Zygmunt*, 652 N.W.2d 537, 544 (Minn. App. 2002), *review denied* (Minn. Dec. 30, 2002). "That the record might support findings other than those made by the [district] court does not render the findings clearly erroneous." *Id.* An abuse of discretion occurs when the district court's decision is against logic or not supported by the record evidence. *Id.*

A court may award spousal maintenance if it finds that the spouse seeking maintenance either does not have sufficient property or resources to provide for his or her reasonable needs in light of the standard of living during the marriage or is unable to self-support, taking into consideration the marital standard of living and any other relevant circumstances. Minn. Stat. § 518.552, subd. 1 (2012). Before making a decision, a court must consider several factors, including: (1) the financial resources of the party seeking maintenance; (2) whether additional education or training is necessary in order to find

4

appropriate employment; (3) the marital standard of living; (4) the duration of the marriage and the period of time the party seeking maintenance has been absent from employment; (5) whether the party seeking maintenance has forgone employment opportunities; (6) the age and physical and emotional condition of the party seeking maintenance; (7) the ability of the payor spouse to meet needs while paying maintenance; and (8) the contribution of each party to the acquisition of marital property and the furtherance of the other party's employment. *Id.*, subd. 2 (2012).

Fu contests several of the district court's findings that support its decision not to award maintenance. The district court found that (1) the parties had collaborated on the decision of where Zhang would do his residency; (2) Fu's estimate of the opportunities she had foregone and what her career track could have been were speculative, because "[s]uccess [in achieving a tenure track at a major university] is very much dependent upon the individual candidate, their labs, publications, and being able to obtain external grants for their projects"; (3) Fu was able to continue and complete research, obtain grants, and publish despite remaining at Mayo; (4) both parties gave tremendous support to the other's academic pursuits; and (5) at least one witness opined that Fu limited her career not because of Zhang, but because of her children. The court's findings are supported by the record and are not clearly erroneous.

Fu also contests the district court's findings that her monthly budget is $10,810, and that she is capable of self-support. Fu argues that Zhang enjoys a "relatively extravagant lifestyle," while she and the children live in a manner "significantly below the standard of living the parties enjoyed during the marriage." She claims that she does

5

not have sufficient income to purchase a home similar to the marital homestead because of the higher cost of housing in Virginia and that she is unable to make voluntary retirement contributions because of her "limited financial resources."

Although a court must consider the marital standard of living, it may also consider whether the standard of living was long-term or relatively short-lived. *Robert*, 652 N.W.2d at 545. In *Robert*, the court noted that the parties had lived modestly for 18 of the 21 years they were married. *Id.* Here, Fu and Zhang lived in much more modest circumstances until 2009, when Zhang's salary quadrupled after completion of his residency. By 2010, Fu had moved to Virginia, so the parties enjoyed a higher standard of living for a relatively short period of time.

Fu earns close to $100,000 per year and has retirement and health benefits; she is highly educated and has worked continuously during the marriage; although Fu claims that she gave up employment opportunities, she continued to work in her area of expertise; and both Fu and Zhang supported each other's ambitions. Further, Zhang was ordered to pay over $5,000 per month for child support and extracurricular activities; Fu was awarded both tax exemptions; Fu received a generous portion of the marital assets; and Zhang agreed to put $2,000 per month into a college fund for the children, relieving Fu of that responsibility. Finally, the district court found Fu not credible as to her need for spousal maintenance; the district court dismissed Fu's concerns that she would not be able to properly feed her children or buy them electronic games without spousal maintenance, finding these statements "simply silly" and "without merit." Based on

these findings, which are supported by the record, the district court did not abuse its discretion by refusing to award Fu spousal maintenance.

### *Marital property and debt*

The parties raise two challenges to the marital property division. Fu argues that the district court abused its discretion by refusing to order Zhang to pay part of the $50,000 that she borrowed from her sister. Zhang argues that the district court abused its discretion in calculating the equalization payment because there is no factual basis for the amount awarded.

#### *Debt*

In October 2012, during the course of these proceedings, Fu borrowed $50,000 from her sister, to pay her attorney fees and for her daily support. Zhang was not aware of this loan. In February and April 2012, Fu's sister repaid Fu $25,000 that she previously had borrowed from the parties. Fu did not inform Zhang of this payment. Zhang has not made a claim for part of this $25,000.

We review the district court's assignment of marital debt for an abuse of discretion. *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002); *Berenberg v. Berenberg*, 474 N.W.2d 843, 848 (Minn. App. 1991), *review denied* (Minn. Nov. 13, 1991). "This court will affirm the district court's division of property if it had an acceptable basis in fact and principle even though this court might have taken a different approach." *Passolt v. Passolt*, 804 N.W.2d 18, 25 (Minn. App. 2011) (quotation omitted), *review denied* (Minn. Nov. 15, 2011). During the pendency of a marital dissolution, if a party encumbers, conceals, or disposes of marital assets without the

7

consent of the other party, the district court "shall compensate the other party by placing both parties in the same position that they would have been in" had the action not occurred. Minn. Stat. § 518.58, subd. 1a (2012).

The district court found that Fu borrowed the money without Zhang's knowledge or consent. As of March 2012, Zhang was paying child support and maintenance, and Fu was employed and had received a substantial repayment of a loan from her sister. On these facts, the district court's conclusion that Fu should be responsible for the debt was not an abuse of discretion.

*Equalization payment*

The district court found that Zhang would receive $226,631 in marital property and Fu would receive $138,605.[1] Because of this difference, the district court ordered Zhang to pay Fu $44,013 for equalization. In addition, the district court found that Zhang had "intentionally, and without [Fu's] consent, misappropriated marital assets on trips and personal expenditures not related to the children and well in excess of his normal standard of living[,]" and that these expenditures were made "[d]uring the period of separation up until the time of trial." Zhang argues that any expenditure made after the valuation date should not be considered to be misappropriation of a marital asset.

This court determines whether property is marital or nonmarital as a question of law, but defers to the district court's findings of fact. *Prahl v. Prahl*, 627 N.W.2d 698, 705 (Minn. App. 2001). "Marital property" is defined as any real or personal property

---

[1] As stated above, there is an error here in the amount of Fu's retirement assets, which Zhang has conceded; Fu should receive an additional $3,700 in equalization payment due to the mathematical error.

8

acquired by the parties during the marriage relationship up until the valuation date. Minn. Stat. § 518.003, subd. 3b (2012). In *Stageberg v. Stageberg*, 695 N.W.2d 609, 615 (Minn. App. 2005), *review denied* (Minn. July 19, 2005), this court held that "the portion of a contingent fee for work in progress on the valuation date that is attributable to work done before the valuation date . . . may be treated as marital property for dissolution purposes." This suggests that Zhang's earnings before the valuation date are considered marital in nature; however, it also suggests that Zhang's earnings after the valuation date are nonmarital. The district court's finding that Zhang dissipated marital assets after the valuation date is clearly erroneous.

Fu submitted an exhibit setting forth Zhang's expenditures, summarized for the period of January 1, 2011, through the valuation date, March 1, 2012, and a second summary of expenditures between March 2, 2012, and October 2012. Her calculation of assets dissipated before the valuation date is $55,908. Minn. Stat. § 518.58, subd. 1a, provides that if a party demonstrates that the other party has dissipated marital assets, the court shall compensate the wronged party. "In compensating a party under this section, the court, in dividing the marital property, may impute the entire value of an asset and a fair return on the asset to the party who transferred, encumbered, concealed, or disposed of it." Minn. Stat. § 518.58, subd. 1a. Although the district court incorrectly considered earnings spent after the valuation date, it is within the district court's discretion to impute the full value of $55,908 of assets dissipated before the valuation date. Thus, the district court's use of approximately $44,000 to equalize the marital property division is not an abuse of discretion.

*Child-support arrearages*

Fu argues that the district court abused its discretion by declining to award her child-support arrearages for the period of time between service of the dissolution petition and the temporary hearing. Fu also asserts that the district court abused its discretion by not awarding her child-support arrearages for the difference between what Zhang paid and what the guidelines support would have been between September 2012, when the second child went to live with her, and April 1, 2013, when the final judgment was entered.

We review the district court's child support orders for an abuse of discretion. *Bauerly v. Bauerly*, 765 N.W.2d 108, 110 (Minn. App. 2009). A court abuses its discretion when it misapplies the law, or its decision is against logic and the record evidence. *Id.*; *Hunley v. Hunley*, 757 N.W.2d 898, 900 (Minn. App. 2008).

The district court here ordered child support at a temporary hearing in February 2012, in accordance with the requirements of Minn. Stat. § 518A.35 (2012), based on each party having physical custody of one child and Fu receiving maintenance payments from Zhang. "Generally, whe[n] no prior order to pay child support exists, it is improper to give a support order retroactive effect." *Davis v. Davis*, 631 N.W.2d 822, 827 (Minn. App. 2001). Exceptions to this general rule exist, but these involve reimbursement of public assistance or establishment of paternity. *See, e.g.,* Minn. Stat. § 256.87, subd. 1, (2012); Minn. Stat. § 257.66, subd. 3 (2012). Once a support obligation is established, a court may modify it retroactively, but "only with respect to any period during which the petitioning party has pending a motion for modification [and] only from the date of

service of notice of the motion on the responding party." Minn. Stat. § 518A.39, subd. 2(e) (2012). Therefore, the district court's refusal to award retroactive child support to the date of service of the dissolution petition was not an abuse of discretion.

In August 2012, Fu moved to change custody of the child living with Zhang and increase child support. Before the hearing was held, Fu and Zhang reached an agreement about custody, permitting J.Z. to live with Fu in Virginia. The transcript of the hearing reveals no discussion about child support. Zhang paid the child support ordered in February, plus an additional $1,000 per month, a total of $2,231 per month, and maintenance of $1,500 per month until the final judgment and decree. Fu could have challenged the temporary order at any time before the permanent order was entered, but she did not. *See Butt v. Schmidt*, 747 N.W.2d 566, 578 (Minn. 2008) (stating party may move for modification of temporary support order).

Finally, the court may, in its discretion, tailor a final dissolution order to include retroactive child support, as part of its discretionary authority. *Korf v. Korf*, 553 N.W.2d 706, 710 (Minn. App. 1996). In *Korf*, this court concluded that the district court, by finding that the obligor was current in his child support obligation, had implicitly considered the issue of retroactive child support. *Id.* at 711. Although the obligor in *Korf* was seeking a retroactive reduction in child support payment, which the district court refused to grant, the principle applies equally to a request for a retroactive increase in child support. The district court determined here that Zhang was current in his child support obligation. The district court's decision not to award retroactive child support was not an abuse of discretion.

11

*Valuation date*

Fu argues that the district court abused its discretion by choosing March 1, 2012, as the valuation date, instead of November 27, 2012, the initially scheduled prehearing settlement date. A district court values marital assets for the purpose of division "as of the day of the initially scheduled prehearing settlement conference, . . . unless the court makes specific findings that another date of valuation is fair and equitable." Minn. Stat. § 518.58, subd. 1 (2012). This court reviews the district court's choice of the marital property valuation date for an abuse of discretion. *Grigsby v. Grigsby*, 648 N.W.2d 716, 720 (Minn. App. 2002), *review denied* (Minn. Oct. 15, 2002). "[W]hen a district court uses a valuation date other than the date of the initially scheduled prehearing settlement conference, the date usually bears a rational relationship to the facts of the dissolution in question." *Alam v. Chowdhury*, 764 N.W.2d 86, 92 (Minn. App. 2009).

The district court did not make specific findings that a date other than the prehearing settlement conference date was fair and equitable, although Fu challenged the valuation date three times. Based on the record, we can speculate as to why the district court chose March 1, 2012, but without findings we cannot determine whether the district court abused its discretion. We therefore remand to the district court with instructions either to amend the valuation date to the date of the prehearing settlement conference or to make specific findings to support its choice of March 1, 2012.

*Attorney fees*

Fu challenges the district court's refusal to award her attorney fees. The district court "shall" award need-based attorney fees if it finds that (1) payment of fees is

necessary to permit a good faith assertion of rights and it will not contribute unnecessarily to the length or expense of the proceeding; (2) the party from whom fees are sought has the ability to pay them; and (3) the party seeking fees does not have the means to pay them. Minn. Stat. § 518.14, subd. 1 (2012). The court may also award conduct-based attorney fees if it finds that a party has unreasonably contributed to the length or expense of a proceeding. *Id.* The district court is expected to make findings on the statutory factors, unless a review of the order discloses that the district court considered the factors in reaching a decision. *Geske v. Marcolina*, 624 N.W.2d 813, 817 (Minn. App. 2001).

Here, the district court flatly stated that "there is nothing associated with [Zhang's] behavior to support an award of conduct-based attorney fees." As to need-based attorney fees, the district court found that Fu had not acted in good faith, because she engaged in lengthy, unnecessary discovery, she was difficult about resolution of the custody issue, she inflated her financial need, and she failed to respond to requests by Zhang to settle certain issues. Without analyzing the relative financial status of the parties, the district court rejected need-based fees because Fu failed to meet the first requirement: a good faith assertion of rights that does not contribute to the length or expense of the proceeding. *See Peterka v. Peterka*, 675 N.W.2d 353, 360 (Minn. App. 2004) (affirming rejection of request for attorney fees because much of the attorney-fee liability was the product of unnecessary litigation that did not rise to the level of good faith).

Fu cites to examples in the record that she claims demonstrate Zhang's bad faith and lack of cooperation, but the record supports the district court's decision. Because

13

there is support in the record for the determination, the district court did not abuse its discretion by refusing to award need-based attorney fees.

*Child-care expense*

Zhang argues that the district court made a clerical or mathematical error in calculating the child-care expense. The district court found that Fu would incur $1,100 per month for child-care expenses for D.Z., $550 per month for J.Z., and an additional $1,000 per month for nanny expenses when Fu worked extra hours. The court stated, "This equals $3,150 per month in child care." This actually equals $2,650 per month. However, in post-trial motions, Zhang brought the same mathematical error to the court's attention and the court refused to correct it. Fu argues that the district court's figure is fair and supported by the evidence. But the district court's figures do not add up and the district court did not make a finding to support the award.

Minn. Stat. § 518A.40, subd. 1 (2012) provides that a court must order parents to pay proportionate shares of child-care costs. This section states that "[t]he amount of work-related or education-related child care costs required by this subdivision to be divided between obligor and obligee is the total amount received by the child care provider from the obligee and any public agency for the joint child or children." Minn. Stat. § 518A.40, subd. 1. While a court enjoys considerable discretion for child-support orders, an apportionment of child-care expenses must be based on actual amounts expended. Minn. Stat. § 518A.39, subd. 7 (2012). In *Jones v. Jarvinen*, this court noted that "child-care support awards are treated differently than other child-support awards." 814 N.W.2d 45, 47 (Minn. App. 2012). The court reasoned that "[t]he statute's use of the

14

term 'must' creates a mandate that child-care support be based on actual child-care expenses." *Id.*

The district court's award of additional child-care payments is not supported by its findings. We therefore reverse and remand to the district court to correct the amount awarded or to support its award of additional child-care payments with findings.

**Affirmed in part, reversed in part, and remanded.**