**In re the Marriage of Mary Louise Erickson DOBRIN, n/k/a Mary Louise Erickson, f/k/a Mary Louise Cooney, Petitioner, Respondent,**

v.

**Dale Thomas DOBRIN, Appellant.**

No. C6–96–1054.

Court of Appeals of Minnesota.

Dec. 3, 1996.

Review Granted Jan. 29, 1997.

Ronald D. Ousky, Gelhar & Ousky, P.A., Bloomington, for Respondent.

Raymond M. Lazar, Elizabeth B. Bryant, Fredrikson & Byron, Minneapolis, for Appellant.

Considered and decided by PETERSON, P.J., and KLAPHAKE and DAVIES, JJ.

## OPINION

DAVIES, Judge.

In this dissolution proceeding, ex-husband challenges, on numerous grounds, the permanent spousal maintenance award and the award of attorney fees. We affirm.

## FACTS

Appellant Dale Thomas Dobrin and respondent Mary Louise Erickson Dobrin were married from September 1989 until December 1993. At the time of the marriage, appellant was 46 and respondent was 49. Ap-

pellant is employed as a physician. In the years from 1989 to 1992, the range of his gross annual income was roughly $200,000 to $400,000. At the time of the marriage, respondent, who has a nursing degree and a master's degree in public health, earned $46,000 annually. Because of conflicts with her supervisor, she resigned her position about nine months after marrying. She testified that she would not have left her job without the security of appellant's income and that he supported her decision to resign.

Respondent filed for dissolution in January 1992. She was subsequently awarded $3,500 per month in temporary maintenance for nine months, ending in July 1993, when it became $1,000 per month. When the trial court entered its judgment in December 1993, it denied respondent's request for further maintenance.

Respondent appealed the denial of maintenance (among other things). In December 1994, this court, quoting Minn.Stat. § 518.552, subd. 1(b) (1992), ruled that the evidence required a finding that she " 'is unable to provide adequate self-support * * * through appropriate employment,' " reversed the denial of maintenance, and instructed the trial court on remand to set maintenance in "a reasonable amount."

On June 25, 1995, the trial court set permanent spousal maintenance at $2,975 per month, effective January 1, 1994 (in practical effect, the date of the original judgment). This created an 18–month arrearage. The trial court later granted $6,473 in attorney fees to respondent (in addition to another $750 granted in conjunction with appellant's 1995 motion for reconsideration).

Appellant appeals from the June 1995 maintenance order and the subsequent attorney fees awards.

## ISSUES

I. Did the trial court, in setting spousal maintenance, improperly ignore information on husband's changed income?

II. Did the trial court improperly award retroactive maintenance?

III. Did the trial court, in setting spousal maintenance, improperly consider the duration of the marriage?

IV. Did the trial court, in setting spousal maintenance, improperly consider the parties' alleged 20–year premarital relationship?

V. Did the trial court err in calculating spousal maintenance?

VI. Did the trial court err by failing to order periodic reductions in the spousal maintenance award?

VII. Did the trial court err by awarding attorney fees to respondent?

## ANALYSIS

### I. Income Information Used to Determine Maintenance Award

Appellant claims that his income declined during the appeal, and that his new income should have been used in calculating his maintenance obligation on remand. We disagree.

In *Duffey v. Duffey,* 416 N.W.2d 830, 833 (Minn.App.1987), *review denied* (Minn. Feb. 24, 1988) (*Duffey I*), we reversed and remanded a trial court's temporary spousal maintenance award, ordering the trial court to determine an appropriate permanent award. After the trial court did so, appellant obligee appealed the amount, arguing that the trial court erred by failing to reopen the case to hear evidence about changes in the obligor's financial circumstances during the pendency of the original appeal. *Duffey v. Duffey,* 432 N.W.2d 473, 475 (Minn.App.1988) (*Duffey II*). Noting that we had given no specific instructions to the trial court in *Duffey I* as to how it should comply with the remand order, we held in *Duffey II* that the trial court's decision not to reopen the record for further evidence was not an abuse of discretion and that the obligee's recourse, if the obligor had experienced changed financial circumstances during the pendency of the appeal, was to seek modification under Minn.Stat. § 518.64. *Id.* at 476.

*Duffey II* is directly applicable to this case. The trial court here acted within its discretion by considering on remand the original

record alone. If appellant experienced a change in circumstances while the first appeal was pending, he could have immediately moved in a separate proceeding for a modification under Minn.Stat. § 518.64, subd. 2 (1994). Such a motion might have been stayed pending resolution of the appeal, but it would have been the proper way to preserve a claim of changed circumstances and to set the date upon which any modification should commence. As an alternative, appellant might have, on remand, moved to modify (with modification to commence as of the motion date).

In the absence of either a separate proceeding or a motion to modify, however, the trial court was within its discretion in refusing to take new evidence about appellant's income. Appellant's due process claim based on the trial court's failure to consider his post–1993 income similarly fails.[1]

## II. "Retroactivity" of Maintenance Award

■ Appellant argues that by making the maintenance award effective January 1, 1994 (the month after the original findings and conclusions), the court has ordered an improper "retroactive" award. We disagree. Reconsideration on remand "is a continuation of the original proceedings." *McClelland v. Pierce*, 376 N.W.2d 217, 220 (Minn.1985). In the original proceedings here, respondent asked that she be awarded maintenance in the district court's original judgment, and it was the district court's refusal to award maintenance *in those findings and conclusions* that this court previously reversed. When this court remands with instructions to award maintenance, the award on remand dates back to the time when the trial court erred—in this case, to the time of the order following the trial, the order originally reversed and remanded. To rule otherwise would be to rule that respondent suffered an

injury in the original findings and conclusions (the lack of maintenance) for which this court could not grant relief.

## III. Duration-of-Marriage Factor from Minn.Stat. § 518.552, Subd. 2

■ The standard of review on appeal from a trial court's determination of spousal maintenance is whether the trial court abused its wide discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982).

■ Minn.Stat. § 518.552, subd. 2 (1994), requires consideration, when setting a spousal maintenance award, of eight factors, including the duration of the marriage. Appellant claims that the trial court did not adequately consider that factor. We disagree. In its order, the trial court mentions the short duration of the marriage. We see no reason to conclude that the trial court abused its broad discretion when it viewed this factor as less than conclusive. Appellant cites to cases suggesting that the short duration of a marriage can justify the denial or limitation of spousal maintenance. Nonetheless, the trial court is required to consider all factors in Minn.Stat. § 518.552, subd. 2, and it appears the trial court, exercising its discretion, felt that other factors outweighed the marriage duration factor.

## IV. Consideration of Premarital Relationship

■ At the original trial, respondent testified that she met appellant in 1969, and stated:

The relationship began as a friendship and developed into a—more of a relationship, * * * there were times when we didn't see each other, but nevertheless the feelings that we had for each other continued.

We do not understand why appellant was prevented from seeking modification of the award prior to entry of the trial court's order. And Minn.Stat. § 518.64, subd. 2 (1994), does not provide for a retroactive challenge, as the trial court suggests. But, because the trial court's discussion of this point is advisory, we need not formally reverse on this part of its analysis.

---

1. The trial court in its order noted (as dicta) that appellant
should [hereafter] have the right to retroactively challenge spousal maintenance awarded from January 1, 1995 [the month this court's earlier opinion was released] through the date of this Order, pursuant to Minn.Stat. sec. 518.64, subd. 2(a) and (b), since he was not afforded the opportunity to do so until this Order had been entered.

Shortly after this testimony, which was not objected to, respondent was asked to characterize the nature of the relationship from the time they met until the marriage. The court sustained appellant's objection to the question on relevance grounds. Nonetheless, the trial court orders and this court's prior opinion mention the 20–year premarital relationship. Appellant argues that: (1) there is no evidence of such a relationship in the record; and (2) the relationship was improperly considered when setting the maintenance award.

Appellant is wrong on both points. His own appendix includes the unobjected-to testimony quoted above. And the trial court made it plain that it was not considering the premarital relationship to set the proper amount of maintenance, but rather only to help evaluate the reasonableness of respondent relying on the stability of the parties' marriage when she quit her employment.

## V. Calculation Leading to Maintenance Award

Appellant claims the trial court, in its June 25, 1995, order, incorrectly stated respondent's premarital income. Because the trial court explicitly addressed this error in its November 13, 1995, order, we find no merit in appellant's claimed error.

Appellant also claims that the maintenance award was improperly calculated to cover amounts respondent owes to her parents for loans they made to support her during the period after the temporary maintenance award terminated. We disagree, for the trial court expressly excluded "debt services" amounts from its calculations.

## VI. Failure to Order Periodic Reduction in Maintenance Award

■ Appellant asserts that the trial court should have ordered a periodic reduction in the maintenance award as an incentive for respondent to obtain employment. The trial court stated:

This step-down type of maintenance is appropriate where the obligee has returned to the work force and can be predicted to move closer to a self-supporting status as the years go by. The Court previously considered [appellant's] former counsel's argument for this type of maintenance and

found nothing in the circumstances of this case that indicates that [respondent] is likely to make more money as the years go by.

In our prior opinion in this case, we found no bad faith on appellant's part in failing to find work, noting her age (54), her several-year absence from the work force, and her significant health problems. *Dobrin v. Dobrin*, No. C8–94–967, 1995 WL 2230 (Minn.App. Jan. 3, 1995), *review denied* (Minn. Mar. 1, 1995). The trial court, on remand, did not abuse its broad discretion in declining to implement a maintenance award with periodic reductions. We recognize that our decision ultimately places the burden on the maintenance obligor to discover, and raise by motion for modification, any change of circumstances that make the permanency of the award or its amount unfair. We note that Minn.Stat. § 518.64, subd. 1 (1994), contemplates such motions for modification of a permanent maintenance award. *See Poehls v. Poehls*, 502 N.W.2d 217, 218 (Minn.App.1993) ("Permanent maintenance" is term of art putting burden of proof on the obligor to show the propriety of a modification.).

## VII. Attorney Fees

■ The trial court awarded respondent $750 in attorney fees related to her response to appellant's July 1995 motion for amended findings or a new trial, and $6,473 in other post-remand attorney fees. A court may award attorney fees if it finds:

(1) that the fees are necessary for the good-faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding;

(2) that the party from whom fees * * * are sought has the means to pay them; and

(3) that the party to whom fees * * * are awarded does not have the means to pay them.

Minn.Stat. § 518.14, subd. 1 (1994).

We disagree with appellant's contention that the trial court failed to make the necessary findings. The trial court's order discusses all three factors. Although it does not mention specific income figures related to

factors (2) and (3), the finances of the parties are discussed fully in the court's prior orders. Thus, it was not inappropriate in the attorney fees order for the trial court to discuss the parties' economic situations in more general terms.

■ This court directed the trial court to resolve the attorney fees issue prior to our hearing this appeal. Appellant complains of the following language in the trial court's order responding to this requirement:

> The Court had attempted, by its earlier reservation of fees, to sweeten the prospect of [appellant] accepting this Court's decision on remand.

Appellant cites *Nardini v. Nardini*, 414 N.W.2d 184, 199 (Minn.1987), for the proposition that an attorney fees award must be reversed when it was made to force the parties to cease litigating.

The trial court here originally declined to award attorney fees to respondent in an effort to make it easier for appellant to accept the award of maintenance. If anyone could have complained about that now-superseded decision, it was respondent. The trial court did not abuse its discretion in later awarding fees when this court required it to resolve the issue prior to appeal.

## DECISION

The trial court did not err in its maintenance and attorney fees decisions.

**Affirmed.**