**In re the Marriage of Patricia L. DUFFEY, Petitioner, Appellant,**

v.

**John W. DUFFEY, Respondent.**

**No. C9–87–585.**

Court of Appeals of Minnesota.

Dec. 22, 1987.
Review Denied Feb. 24, 1988.

Jack S. Jaycox, Paul M. Gabbert, Jack S. Jaycox Law Offices, Ltd., Bloomington, for petitioner, appellant.

Brian L. Sobol, Stephen C. Davis, Katz, Davis & Manka, Ltd., Minneapolis, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

FOLEY, Judge.

This is an appeal from the trial court's judgment and decree which dissolved the parties' marriage. On appeal, appellant Patricia L. Duffey argues the trial court erred by determining the increase in value of respondent John W. Duffey's nonmarital business interest was nonmarital property and by determining the amount and duration of spousal maintenance.

## FACTS

The parties were married on August 9, 1966. Currently, appellant is 42 years old and respondent is 43 years old. The parties have two children, Timothy, 17 years old, and John, 19 years old.

Respondent has worked full time for C.J. Duffey Paper Company (Duffey Paper) for the last 20 years. His duties at Duffey Paper relate mainly to warehousing and maintenance. Respondent is not involved in making management decisions and plays no role in the operation of the company.

Respondent owns a minority interest in seven closely-held corporations and one partnership, all of which are related to the wholesaling of paper products. Respondent's individual interest in the corporations varies from 12% to 36%. However, respondent, together with other members of his family, own a controlling interest in all of the corporate entities.

Respondent is a vice president and secretary of Duffey Paper in which he owns a 26% interest. Respondent has been on the Duffey Paper Board of Directors for approximately 14 years. His mother, sister and Alfred Reger comprise the rest of the board. Respondent is also an officer and director of the other corporations in which he has an interest. Respondent claims although the Duffey corporate entities have technically named a Board of Directors, they do not have board meetings.

Reger was hired by the Duffey family to serve as the president, treasurer, chairman of the board and general operating officer of the Duffey corporations. While Reger has worked for these corporations for approximately 40 years, he has no ownership in Duffey Paper or Paper Converting Corporation. He owns only a small interest in Martin Falk Paper Company–Minneapolis, Martin Falk Paper Company–Duluth, 425 North Washington, Inc. and Performance Service Company. Undisputed testimony indicated Reger "runs the whole ship," delegating few responsibilities to others.

During trial, respondent traced each share of stock to shares he held either before the marriage or received by gift or inheritance after marriage. Respondent testified he never personally purchased any of his shares of stock. The trial court found respondent's interest in his various business entities were nonmarital property and any increase in value in respondent's interest in the various entities remained his nonmarital property.

Both parties submitted expert testimony relative to the value of respondent's various business entities. Appellant's expert testified respondent's business interests totaled $3.6 million. Respondent's expert valued respondent's business interests at $3 million.

During their marriage, the parties enjoyed a comfortable, upper middle class standard of living. The Duffeys were long-standing members of a country club and took at least one trip to Palm Springs every year.

Prior to the parties' marriage, appellant worked for one year as a secretary. Appellant did not work outside the home during

the marriage and is currently unemployed. Appellant testified she planned on completing her education to become knowledgeable, and she thought she would probably work for life satisfaction if it rounded off her life. However, appellant does not feel an obligation to support herself.

The trial court found the value of the parties' marital estate was $1,431,489 and awarded appellant $858,893 or 60%. In addition, the trial court awarded appellant temporary spousal maintenance in the amount of $5,000 per month for four years.

## ISSUES

1. Did the trial court err by determining the increase in value of respondent's nonmarital business interests was nonmarital property?

2. Did the trial court err by determining the amount and duration of spousal maintenance?

## ANALYSIS

1. As appellant does not challenge the trial court's determination that respondent's interest in his various business entities is nonmarital property, the issue for our consideration is whether the trial court properly found the increase in value of respondent's nonmarital business interests to be nonmarital property.

■ Findings of fact made by a trial court will not be set aside unless clearly erroneous and due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses. Minn.R. Civ.P. 52.01. We will not set aside findings of fact unless left with a definite and firm conviction a mistake has been made. *Minnesota Public Interest Research Group v. White Bear Rod & Gun Club*, 257 N.W.2d 762, 782–783 (Minn.1977). The trial court's characterization of property as marital or nonmarital is a determination of law. *Van de Loo v. Van de Loo*, 346 N.W.2d 173, 175 (Minn.Ct.App.1984). However, we must defer to the trial court's findings on underlying facts, such as dates of acquisition and value. *Rosenberg v. Rosenberg*, 379 N.W.2d 580, 583 (Minn.Ct.

App.1985), *pet. for rev. denied* (Minn. Feb. 19, 1986).

■ The Minnesota Supreme Court has recently considered the allocation of marital and nonmarital interests. *See Nardini v. Nardini*, 414 N.W.2d 184 (Minn.1987). In *Nardini*, the husband held a 50% interest in a business prior to the marriage. Subsequent to the marriage, the parties purchased the other 50% interest. The *Nardini* court held the trial court's fundamental error in apportioning the martial and nonmarital business interests was its assumption that the husband's 50% nonmarital interest should forever be 50% of the value of the business. *Id.* at 195. The *Nardini* court held:

> [T]he *increase in the value of nonmarital property attributable to the efforts of one or both spouses* during their marriage, like the increase resulting from the application of marital funds, *is marital property.* Conversely, an increase in the value of nonmarital property attributable to inflation or to market forces or conditions, retains its nonmarital character.

*Id.* at 192 (emphasis added). Here, the trial court found:

> The testimony indicated that Respondent is not a key person in any of the business entities. Respondent's involvement with the businesses relates primarily to warehousing, equipment, buildings, and trucks. Mr. Reger testified that although both he and Respondent's father had attempted to involve Respondent in what they considered the "paper business" in general and not just the warehouse/maintenance functions, Respondent has shown no interest and has not been involved in these key functions in the business and has maintained an extremely limited and minor role confined primarily to the warehouse.
>
> *The evidence does not support that Respondent contributed in any material way toward any increase in value in any of the business entities during the marriage relationship.* Any increase in value in Respondent's interest in the various business entities is attributed to

factors unrelated to Respondent's efforts and is in the nature of appreciation. Accordingly, all of Respondent's interests in the various entities is his nonmarital property.

(Emphasis added.)

*Nardini* involved a corporation owned entirely by husband and wife, the husband owned a 60% interest and the wife owned a 40% interest. Here, appellant owns no stock and has not contributed in any way toward the appreciation in the value of respondent's business interests. Further, respondent's marital efforts did not contribute to the increase in the value of his business entities.

As we are not left with a "definite and firm conviction" that the trial court erred in determining the increase in the value of respondent's nonmarital business interests was respondent's nonmarital property, we affirm.

■ Appellant also argues because respondent, together with other members of his family, are controlling shareholders, he can choose whether or not to declare a cash dividend or retain the earnings. Thus, it is appellant's position that all corporate earnings, whether distributed in the form of dividends or retained in the form of retained earnings constitute marital property. In *Nardini*, the corporation had retained earnings of $563,598, all of which was earned during the marriage. The court held:

> It seems to us that the nature of income generated *through the efforts of the marital partners* is not changed by its retention as shareholder equity in a wholly owned corporation. Whether the business be carried on as a family corporation or a partnership or a sole proprietorship, income earned during the marriage, whether distributed or undistributed or reinvested in the business, is marital property.

*Id.* at 195. The distinguishing factor here is the retained earnings were *not* generated through the efforts of appellant or respondent. Thus, any increase in the value of respondent's stock due to retained earnings is nonmarital property.

2. The trial court has wide discretion in determining the amount and duration of spousal maintenance and its determination will not be reversed absent an abuse of that discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). Here, the trial court found:

> [Appellant] is presently 41 years of age and in good health. She has not held full-time employment throughout the parties' marriage, though she is fully capable of doing so. An employment evaluation submitted by [appellant] indicates a strong aptitude and interest in sales, particularly real estate sales. [Appellant] is capable of securing employment to contribute to her own support.

In this case, as in *Nardini*, when the statutory criteria are applied, it is apparent the award of spousal maintenance should have been permanent. The *Nardini* court held:

> The best that can be said, however, of the prospect of Marguerite's becoming fully self-supported through a combination of income from investments and employment is that it is uncertain at this time. *The statute requires that uncertainty to be met by an award of permanent maintenance with the order left open for later modification.*

*Id.* at 198 (emphasis added). Although appellant may be capable of securing employment, it is uncertain whether she can become fully self-supporting. Therefore, we find the trial court's award of temporary spousal maintenance is clearly an abuse of discretion. We reverse and remand for a determination of an appropriate amount of permanent spousal maintenance.

### DECISION

Affirmed in part, reversed in part and remanded.

CRIPPEN, Judge, dissenting.

1. Marital property.

"All property" acquired after marriage is presumed to be marital property according to the Minnesota statutory formula. Minn. Stat. § 518.54, subd. 5 (1986). Nevertheless, the "increase" in its value is part of

the spouse's property acquired before marriage or otherwise defined as nonmarital property. *Id.*

Finally, in October 1987, there was general satisfaction the scope of "increase" in nonmarital property was definitively settled by the Minnesota Supreme Court. Nonmarital increase retains its nonmarital character, said the supreme court in *Nardini*, if it is "attributable to inflation or to market forces or conditions." *Nardini v. Nardini*, 414 N.W.2d 184, 192 (Minn.1987). Conversely, said the court, increases in value become marital property if they are attributable to application of marital funds or the efforts of one or both spouses during the marriage. *Id.*

*Nardini* was of great moment because it applied the newly announced definition of marital property to value increases in corporate stock attributable to "retained earnings" or retained "shareholder equity," and not attributable to "market conditions." *Id.* at 194, 195. These increases, the fruit of Ralph Nardini's investment of effort after the couple married, were not to be considered nonmarital property based on the fact that corporate accountants looked upon them as equity rather than income. In the unequivocal language of the supreme court:

> Whether the business be carried on as a family corporation or a partnership or a sole proprietorship, income earned during the marriage, whether distributed or undistributed and reinvested in the business, is marital property.

*Id.* at 195.

All of this is fine, we now hold, for the fruit of efforts which is hidden in corporate balance sheets of a corporation wholly owned by the couple. But, says this majority, no other income of a stockholder is affected—not even the retained income of a corporation controlled by the spouse and members of his family. Thus, respondent is given as nonmarital property over $3–million in corporate equity notwithstanding his inability to prove that this investment represented only gifts and the increase in their value due to inflation or market conditions. The record includes undisputed evidence that the book value of respondent's corporate investments has increased substantially since it was acquired due to decisions to invest earnings as an alternative to payment of dividends.

What explains this disregard for the core precepts of *Nardini?* In the language of the majority opinion, *Nardini* is said to apply to earnings tied to marital efforts, but not to other earnings which are wholly unrelated to inflation or market factors. This distinction is unfounded.

*Nardini* strikes at hidden earned income, and its holding is equally compelling for any form of earnings. The *Nardini* holding on hidden earnings is clear and vital, and there is no merit to the proposition that it will govern only the example of hidden earnings presented by the facts identified in that case. At least for closely-held family corporations, there is no reason to honor the pretext that undistributed earnings are the appreciation of equity, the fruit of market conditions.

As noted in the majority opinion, the supreme court in *Nardini* discussed the consequences of reinvesting cash dividends, noting that these investments constitute marital property. Thus, it is suggested, there is no marital property unless earned dividends are declared, paid and reinvested. The discussion of cash dividends in *Nardini* has no bearing on the issue in the case on income hidden by withholding declaration and distribution of dividends. By conditioning a finding of marital property on the actual occurrence of cash dividends we discard, weeks after it is decided, the central holding of *Nardini.*

It is evident that the retention of earnings can be more surely dictated or manipulated by the spouse who has full control of a corporation. Does this make other family corporation investments distinguishable? No doubt, as to actual taking and enjoyment of income, this distinction is significant. The issue here, however, does not deal with corporate decisionmaking, but with the characterization of corporate investments in order to fairly and equitably divide property in a dissolution case. No matter who has retained earnings, they are

retained, and the retention cannot be permitted to dissolve the reality that the resulting increase in equity is not due to inflation or market conditions. Equity so accumulated during marriage is marital property.

Moreover, we should not overstate the distinction between appellant's family corporation investments and the corporate stock owned wholly by a couple. In both cases, retention of earnings may be for purely business reasons or may be for personal, even unfair purposes of diminishing reported income. As against an in-law, it is apparent that family owners of a corporation may be inclined to protect one another. On another occasion the courts will be compelled to decide if *Nardini* affects the marital character of nonfamily corporation stock, including shares in publicly held organizations. For today, however, we are not dealing with dividend decisions so distant from the shareholder, and cannot identify any rationale to withhold application of *Nardini* to appellant's corporation equity.

### 2. Maintenance.

Where a spouse's prospects for becoming self-supporting are uncertain, a permanent maintenance award is appropriate. Minn. Stat. § 518.552, subd. 3 (1986); *Nardini*, 414 N.W.2d at 198. In *Nardini*, the mandate for a permanent award was premised on the observation that it was "most unlikely" Marguerite Nardini could realize an appropriate annual income from investments and earnings. Here, the much larger property division for appellant makes her prospect for appropriate income much less unlikely.

In its decision for temporary maintenance, the trial court expressly considered appellant's expected income from marital and nonmarital property now awarded to her. There is no indication that the trial court ignored the statutory mandate for a permanent maintenance award in cases where there is some uncertainty as to the need for such an award. Under the circumstances, the trial court did not abuse its discretion in awarding maintenance for a term of four years.

As to the decisions on both issues of the case, I respectfully dissent.