**In re the Marriage of Janis Edwards GOTTSACKER, Respondent,**

**v.**

**Gregory Alan GOTTSACKER, Petitioner, Appellant.**

No. C1–02–615.

Supreme Court of Minnesota.

July 17, 2003.

Alan C. Eidsness, Timothy Mulrooney, Henson & Efron, P.A., Minneapolis, MN, for Appellant.

Susan C. Rhode, Ben M. Henschel, Moss & Barnett, Minneapolis, MN, for Respondent.

## OPINION

PAUL H. ANDERSON, Justice.

In this appeal of a marriage dissolution decree, appellant-husband, Gregory Alan Gottsacker (Gottsacker), seeks review of the lower courts' determinations that (1) respondent-wife Janis Edwards Gottsacker's (Edwards)[1] Accumulated Adjustment Account (AAA) in a subchapter S corporation is nonmarital property, and (2) Gottsacker is not entitled to any reimbursement for taxes Edwards paid on the subchapter S corporation's interest during the marriage. Edwards seeks review of the lower courts' determination that her ownership interest in another closely held corporation, which interest she purchased with distributions from the subchapter S corporation, is marital property. We affirm.

Gregory Alan Gottsacker and Janis Edwards were married in October 1991. Seven and one-half years later, in May 1999, Edwards petitioned for dissolution of the marriage. Before and during the marriage, Edwards acquired and owned a minority interest in the following three businesses: Edco Products, Inc. (Edco), which produces steel siding; Edcoat Limited Partnership (Edcoat), a metal-coating service company; and Edcoat General Partnership, Inc. (Edcoat General), Edcoat's

general partner. These three businesses are closely held corporations owned primarily by Edwards, her parents, brother, and sister. Edwards acquired Edco shares before she married Gottsacker and continued to acquire shares during the marriage. The Edco stock was a gift from Edwards' parents to Edwards alone, and both parties agree that the actual Edco shares are nonmarital.

Edco is a subchapter S corporation, which is a pass-through entity, so all corporate income is allocated directly to the shareholders. Therefore, the Edco shareholders are taxed on their personal tax returns for corporate income in proportion to their ownership interest, regardless of whether the income is distributed to them or retained by the corporation. If the income is not distributed to the shareholder and is instead retained by the corporation, it is retained as a corporate asset and the difference between the income on which the shareholder paid taxes and the income that was actually distributed to the shareholder is recorded in an AAA. The AAA is not an account in the sense that it actually holds the retained funds, but the account serves as an accounting tool for recording the taxed but undistributed interests of each shareholder. The AAA shows each shareholder's basis for previously-taxed income or losses.

Some of Edwards' Edco interest income was distributed to the parties during their marriage and some if it was retained by the corporation. The parties used the Edco distributions for three purposes: (1) to pay taxes on Edwards' Edco interest; (2) to acquire Edwards' interest in Edcoat and Edcoat General; and (3) to supplement their regular income. The distribu-

---

1. Janis Edwards Gottsacker changed her name during the dissolution proceedings and reinstated her maiden name as her last name. The parties, therefore, will be referred to as "Gottsacker" and "Edwards."

tions that were used to pay the taxes on Edwards' Edco interest were made to Edwards specifically for that purpose. Each quarter Edco accountants determined Edwards' tax obligation based on her ownership interest. The corporation mailed her a check for that tax amount, Edwards deposited the check into her account, and she then wrote a check to the IRS to cover the tax obligation. The record indicates that some of the Edco deposits were made into Edwards' private checking account, while some were made into the parties' joint checking account. The taxes were always paid with the funds distributed by Edco and were never paid with the parties' other income or assets.

In 1995, the Edwards family formed the limited liability partnership Edcoat to provide services to Edco. At that time, the family also formed an S corporation, Edcoat General, to act as a general partner to Edcoat. Edcoat General has a 1 percent interest in Edcoat and the remaining 99 percent limited liability partnership interest in Edcoat is shared between the members of Edwards' family and key nonfamily members of Edco management. Edwards acquired a 2 percent ownership interest in Edcoat as a gift from her parents, which the parties agree was nonmarital. Edwards acquired an additional 16.33 percent interest in Edcoat, which she purchased with her distributions from Edco. She also used Edco distributions to purchase a 16.67 percent interest in Edcoat General.[2]

Edwards testified that she had no involvement in the planning for the funding or investing in Edcoat. She received distributions from Edco that Edco's accountants and officers specifically told her to pay over to Edcoat, which she did. Edwards' understanding was that the Edco distributions were made conditioned upon her payment into Edcoat. Conversely, Gottsacker testified that he and Edwards discussed whether to buy into Edcoat.

Stephen Broz, the accountant for the family's three companies and also the family's personal accountant, testified that the business plan for creating the funding for Edcoat required that each of the Edwards' family members receive a distribution from their Edco interest that they would reinvest into Edcoat. Broz further testified that, for a number of business and tax reasons, this plan for creating Edcoat was chosen over a number of options, including the option of making Edcoat a subsidiary of Edco. Broz testified that Edwards legally could have chosen to retain the distributions from Edco that were intended to be sent to Edcoat; but he stated that if she had done so, the distributions from Edco to Edwards would have ceased and the family would have come up with an alternate plan for funding Edcoat.

After a hearing at which both parties testified and presented expert financial witnesses, a consensual special magistrate concluded that the AAA was analogous to retained corporate earnings. The magistrate stated that such earnings are nonmarital "where the underlying stock of the spouse is nonmarital, and where the husband and wife have not expended efforts to enhance the value of the nonmarital stock." But the magistrate went on to find that Edwards' acquisition of the Edcoat interests was accomplished with marital funds because the Edco distributions were income from a nonmarital asset. The magistrate said, "This income on a nonmarital asset is marital and as a result the acquisition of interests in Edcoat are marital."

Based on these and other findings of fact, Edwards was ordered to pay Gott-

---

**2.** The Edcoat and the Edcoat General interests that Edwards purchased with Edco distributions will hereinafter be referred to as her Edcoat interests.

sacker $401,883 within 60 days and the district court entered a decree of dissolution to that effect. Edwards moved to amend the decree or grant a new trial on a number of grounds, including her request that the court reconsider its failure to apply a lack of marketability discount in determining the value of her Edcoat interest. Gottsacker also moved to amend the decree or for a new trial on a number of grounds. These included his request that the court find the AAA to be marital property or, in the alternative, award him his proportionate share of the marital funds that were used to pay the taxes on the income reflected in the AAA.

The magistrate held a hearing on the parties' motions for post-decree relief and the earlier decree was amended to apply a discount for lack of marketability to the Edcoat valuation. Edwards' monetary obligation to Gottsacker was then reduced from $401,883 to $258,325. The amended decree did not specifically address Gottsacker's reimbursement request, and instead included a catch-all paragraph stating "[t]hat all other motions of either Party should be denied."

Gottsacker appealed the decision to treat the AAA as nonmarital property and Edwards appealed the district court's treatment of her Edcoat interest. The court of appeals affirmed on all issues. The court of appeals held that the AAA was nonmarital property because it is not "income" and, if the AAA is appreciation, it is passive appreciation and is therefore nonmarital. *Gottsacker v. Gottsacker*, No. C1–02–615, 2002 WL 31655186, at *3 (Minn.App. Nov.26, 2002). The court went on to state that the district court did not abuse its discretion in failing to credit Gottsacker with his share of marital funds used to pay the AAA taxes. It did so on the ground that the district court had no duty to consider the issue because it was not raised at trial. In the alternative, the court of appeals stated that it could not conclude that the district court abused its discretion because the record could have supported a determination that such equitable relief was not warranted. Finally, the court of appeals affirmed the finding that the Edcoat interest was marital property because it was purchased with income from a nonmarital asset, which are marital funds.

Gottsacker petitioned this court for review of the classification of Edwards' Edco AAA as nonmarital and the denial of his request for reimbursement of taxes paid on the AAA. Edwards petitioned for cross-review of the classification of her Edcoat interest as marital property.

I.

The first issue we must decide is whether the lower courts erred in concluding that Edward's Edco AAA is a nonmarital asset. Gottsacker argues that the AAA is the "income" from Edwards' nonmarital interest in Edco and it is, therefore, a marital asset. Alternatively, if we determine the AAA is not income, Gottsacker argues the AAA is the active appreciation of Edwards' interest in Edco.

The district court has broad discretion when dividing marital property in a dissolution action and will not be reversed absent an abuse of that discretion. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984) (citing as an abuse of discretion a "clearly erroneous conclusion that is against logic and the facts on record"). Determining whether property is marital or nonmarital, however, is an issue over which we exercise independent review, though deference is given to the district court's findings of fact. *Olsen v. Olsen*, 562 N.W.2d 797, 800 (Minn.1997).

It is presumed that all property acquired during the marriage is marital property. *Id.;* Minn.Stat. § 518.54, subd. 5 (2002). One way to escape the marital property presumption is to show that the property meets one of the enumerated classifications of nonmarital property provided in Minn.Stat. § 518.54, subd. 5. The following classifications are enumerated in the statute: gift, bequest, devise, or inheritance to one but not both spouses; property acquired before the marriage; property acquired after the separation; property excluded by antenuptial agreement; property acquired in exchange for nonmarital property; and "the increase in value of [nonmarital property]." Minn.Stat. § 518.54, subd. 5.

█ We have divided the last of these nonmarital classifications—an increase in the value of nonmarital property—into active and passive appreciation. *See Nardini v. Nardini,* 414 N.W.2d 184, 193 (Minn. 1987). Active appreciation is marital property while passive appreciation is nonmarital. *Id. Nardini* required us to allocate as marital or nonmarital the interests in a closely held corporation in which the husband and wife were the only shareholders. *Id.* at 186. The husband had purchased a 50 percent interest in the corporation before the marriage. *Id.* The district court treated 50 percent of the present value of the corporation as the husband's nonmarital property because the court reasoned that this 50 percent interest represented the asset that the husband had acquired before the marriage, plus the increase in value of that nonmarital asset. *Id.* at 191. On appeal, we rejected the district court's reasoning because the statute "does not distinguish between increases in value that occur prior to the marriage and increases that occur during the marriage * * * and does not distinguish between increases due to the efforts of one or both of the spouses

and increases from causes unrelated to the efforts of either of them." *Id.* Accordingly, we held that

> increase in the value of nonmarital property attributable to the efforts of one or both spouses during their marriage, like the increase resulting from the application of marital funds, is marital property. Conversely, an increase in the value of nonmarital property attributable to inflation or to market forces or conditions, retains its nonmarital character.

*Id.* at 192.

Applying this holding in *Nardini,* we determined that over the course of the Nardinis' 30–year marriage, during which both spouses worked for the closely held corporation and received corporate income in the form of salary, pension plan contributions, and other fringe benefits, the corporation had grown significantly from the husband's initial $2,500 investment. *Id.* at 194–95. In fact, at the time of the marriage dissolution, the corporation had retained earnings of $563,598. *Id.* at 195. We concluded that, as the sole shareholders of the corporation, the retained corporate earnings could be attributed to the efforts of both spouses because those earnings were all generated during the marriage. *Id.* at 195. Accordingly, we stated that

> the nature of income generated through the efforts of the marital partners is not changed by its retention as shareholder equity in a wholly owned corporation. Whether the business be carried on as a family corporation or a partnership or a sole proprietorship, income earned during the marriage, whether distributed or undistributed and reinvested in the business is marital property.

*Id.* Thus, we held that nearly the entire present value of the corporation should be considered marital property. *Id.*

In *Nardini,* we illustrated the principle of active versus passive appreciation with a hypothetical involving a spouse owning shares in a publicly traded corporation. *Id.* at 193. On the date of the marriage, the wife owned 300 shares worth $25 a share, or $7,500, but at the time of the marriage dissolution, she owned 800 shares worth $40 a share, or $32,000. The increase in the number of shares was the result of (1) a 2 for 1 stock split, which increased the wife's original 300 shares to 600 shares, and (2) the reinvestment of some of the wife's cash dividends to purchase 200 additional shares. We then quoted the commissioner's note to the original draft of the Uniform Marriage and Divorce Act, on which the language of Minn.Stat. § 518.54, subd 5, is largely based, which states, "[t]he phrase 'increase in value' used in subsection (b)(5) is not intended to cover the income from property acquired prior to marriage. Such income is marital property. Similarly, income from other non-marital property acquired after the marriage is marital property." *Id.* at 193 (quoting Unif. Marriage and Divorce Act § 307 comment at 204 (1970)). Based on this principle, we analyzed the above stock example as follows:

[A] stock dividend or split is nonmarital property: a stock dividend or split, the value of which is determined by market forces, does not increase the shareholder's proportionate ownership

interest in the corporation and is not usually regarded as income. Cash dividends, on the other hand, would be considered a return on the investment or income and, therefore, be marital property. Thus, Jane's 300 original shares and the 300 shares received in the stock split, having a total value of $24,000, would be Jane's nonmarital property, and the 200 shares purchased by reinvesting dividends and having a present value of $8,000 would be marital property.

*Id.* at 194 (citation omitted).

■ The court of appeals has consistently relied on the discussion of this hypothetical from *Nardini* for the tenet that income received during the marriage, whether from marital or from nonmarital property, is deemed marital property.[3] This idea that income from nonmarital assets was marital property was not articulated for the first time in *Nardini;* the court of appeals had articulated this premise in earlier decisions.[4] Thus, we conclude that Minnesota courts have established the following method of analyzing interests associated with nonmarital assets. If the interest is classified as "appreciation," or an increase in the value of the nonmarital asset, it too is nonmarital unless it is classified as "active appreciation" because it is the result of marital effort. If the interest is "income" from the nonmarital asset, it is marital income.

**3.** *See, e.g., Prahl v. Prahl,* 627 N.W.2d 698, 706 (Minn.App.2001) (stating that "[a]s an asset acquired with income generated from a nonmarital asset, shares purchased with reinvested dividends become marital property"); *Swick v. Swick,* 467 N.W.2d 328, 331 (Minn.App.1991) (stating that "[u]nlike appreciation, income becomes an asset 'acquired during the marriage' and, as marital property, is divisible between the parties upon dissolution"). *See also Wiegers v. Wiegers,* 467 N.W.2d 342, 344 (Minn.App.1991) (designating the interest earned from nonmarital certificates of deposit

as marital property without explicitly relying on *Nardini* ).

**4.** *See, e.g., Campion v. Campion,* 385 N.W.2d 1, 4–5 (Minn.App.1986) (characterizing rental income available from nonmarital apartment building as marital income); *Pearson v. Pearson,* 363 N.W.2d 337, 339 (Minn.App.1985) (characterizing rental income received annually from nonmarital farm land as marital property).

■ Applying the foregoing analytical framework to the AAA at issue here, the court of appeals articulated two grounds for affirming the district court's determination that the AAA was not marital income: (1) the earnings retained in the AAA do not constitute income under the definition provided by Minn.Stat. § 518.54, subd. 6 (2002), of "any form of periodic payment to an individual"; and (2) Edwards had no distributive right or substantial control over the AAA and "[t]here is no assurance that her interest in the AAA will ever be distributed."

■ Gottsacker asserts that the court of appeals' analysis is flawed. More specifically, he argues that the court erred in applying the statutory definition for "income" as provided in Minn.Stat. § 518.54, subd. 6. He claims that this definition of income applies only to income as it pertains to support payments. However, the income definition provided in Minn.Stat. § 518.54, subd. 6, follows the introduction of Minn.Stat. § 518.54, subd. 1, which states that the definitions that follow are "[f]or the purposes of sections 518.54 to 518.66." Minn.Stat. § 518.54, subd. 1 (2002). One of the referenced sections, Minn.Stat. § 518.58, is entitled Division of Marital Property. Minn.Stat. § 518.58 (2002). Therefore, the income definition provided in Minn.Stat. § 518.54 applies to the statutes governing marital property division as well as support payments.

Gottsacker attempts to refute this statutory analysis by relying instead on the way Minnesota courts have defined "income" in the marital property division context and then creates his own definition for income as "value an asset generates during the marriage." He asserts that, here, the AAA is the product of Edwards' interest in Edco, relying on the distinction the court of appeals made in *Swick* that "appreciation is intrinsic to the asset itself, income

is a *product* of the asset." *Swick,* 467 N.W.2d at 331. Gottsacker argues that just as stocks can *produce* dividend payments and rental property can *produce* rent, corporate shares can *produce* an AAA.

We do not find Gottsacker's argument persuasive. He appears to suggest that the distinction of the income as the product of the asset is somehow contradictory to the statutory definition of income as "any form of periodic payment to an individual," but he fails to articulate the contradiction. Minn.Stat. § 518.54, subd. 6. Further, even if we were to adopt the court of appeals' *Swick* definition of income as being somehow distinct from the statutory definition provided in Minn.Stat. § 518.54, subd. 6, the AAA is not the "product" of Edwards' interest in Edco in the way that dividends or rental payments are "products." The AAA is a fund retained by the subchapter S corporation and it is possible that the funds referenced in the AAA will never be distributed.

Gottsacker also claims that the court of appeals erred in likening the AAA to retained earnings and stating that retained earnings are nonmarital property. The court of appeals, in likening the AAA to retained corporate earnings, relied largely on the rationale of *Robert v. Zygmunt,* in which an earlier panel of that court faced with very similar facts concluded that an AAA was nonmarital. 652 N.W.2d 537 (Minn.App.2002). In finding the AAA to be nonmarital, the court in *Robert* noted that retained corporate earnings are corporate assets that remain the corporation's property until severed from other corporate assets and distributed as dividends. *Id.* at 543.

Gottsacker asserts that this conclusion is erroneous because we stated in *Nardini* that "income earned during the marriage, whether distributed or undistributed and

reinvested in the business, is marital property." *Nardini*, 414 N.W.2d at 195. Gottsacker's reliance on this language is misplaced. The statement in *Nardini* upon which he relies was preceded by language that limited the holding to "income generated through the efforts of the marital partners" that is "ret[ained] as shareholder equity in a wholly owned corporation." *Id.* This limiting language highlights how most courts that have addressed the issue of retained earnings in closely held corporations have focused their analysis.

Few other states have addressed the issue of how AAA's or other retained assets of closely held corporations are to be categorized. But we find support for our analytical framework in discussions from other jurisdictions that have addressed the issue either directly or tangentially. The determining factor in these decisions from other jurisdictions tends to be the degree of control the shareholder-spouse can exercise over the corporation and, consequently, the degree of control that shareholder-spouse has in determining when to distribute the retained earnings as shareholder dividends.[5] If the shareholder-spouse is

the sole shareholder, for example, a court may view the decision not to distribute the corporate earnings reflected in the AAA as an attempt to shield income from the non-shareholder-spouse and therefore may find the AAA to be income. If the shareholder-spouse is one of many shareholders and has little to no control over deciding when or if to make dividend distributions, treating the AAA as marital property credits the shareholder-spouse with income that may, in fact, never be distributed. This appears to be the rationale that guided the court of appeals in its determination that Edwards' AAA was nonmarital because it stated, "Edwards did not have a distributive right, or substantial control over, the AAA. There is no assurance that her interest in the AAA will ever be distributed." *Gottsacker*, 2002 WL 31655186, at *3.

Gottsacker argues that a Wisconsin Court of Appeals case, *Metz v. Keener*, 215 Wis.2d 626, 573 N.W.2d 865 (1997), supports his position. He claims that our court of appeals too quickly dismissed the similarity of *Metz*, in which the Wisconsin Court of Appeals concluded that an AAA in an S corporation was income that was

---

5. *See, e.g., J.D.P v. F.J.H.*, 399 A.2d 207, 211 (Del.1979) (holding that, in certain situations, retained earnings of a corporation controlled by one spouse may be considered in the calculation of the couple's marital property, and providing a list of factors to consider in making that determination: "consideration of the values which are at stake, whether the increase in retained earnings resulted from a natural enhancement over which the controlling spouse had little or no control, whether such increase resulted from ordinary and necessary business reasons, whether such increase resulted from an intentional purpose by the controlling spouse to prevent earnings from becoming marital property, the impact of any order on other stockholders, on the corporation and on others with an interest in it; the State and Federal tax consequences of any order on each spouse and the corporation"); *Swope v. Swope*, 122 Idaho 296, 834 P.2d 298, 303 (1992) (restating and following

its earlier holdings "that the community has no interest in the retained earnings of a corporation, the stock of which is held as separate property by one of the stockholders, unless the stockholder has sufficient control of the corporation to be able to cause the earnings to be retained"); *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 827 (Mo.1984) (noting that "[g]enerally, the wife could not claim the retained earnings as marital property, because the earnings and profits of a corporation remain its property until severed from other corporate assets and distributed as dividends" but also recognizing that with closely held corporations, in the determination of whether retained earnings are marital property, "the critical distinguishing factors [are] a controlling interest in the corporation by the owner spouse and substantial control over decisions to distribute corporate earnings" and affirming the lower court's ruling that the retained earnings were not marital property).

divisible as a marital asset. Gottsacker argues that the Wisconsin court was persuaded by the same facts that are present here: the shareholder-spouse owned the stock, acquired the AAA as income derived from her interest in the stock, and paid taxes on the interest. Our court of appeals distinguished *Metz* as a case involving a sole shareholder-spouse who acted as the sole manager in the corporation with full distributive rights to the AAA's retained earnings. We agree that the degree of control exercised by the sole shareholder-spouse in *Metz* renders the case inapposite.

■ We conclude that the court of appeals correctly determined that, in this case, the AAA is analogous to retained corporate earnings, the nature of which is best evaluated on a case-by-case basis. This evaluation should follow the tenet that the more control the shareholder-spouse has over the decision to distribute or retain shareholder income, the more likely the court will be to label the AAA income. Here, the district court properly found that Edwards had no such control and we conclude that the court of appeals did not err when it agreed with the district court and concluded that Edwards' AAA was not income.

## II.

■ Gottsacker next argues that even if the AAA is not viewed as "income," it constitutes active appreciation and therefore is marital property. He attacks the district court's treatment of the AAA as passive appreciation and the court's reliance on *Duffey v. Duffey*, 416 N.W.2d 830 (Minn.App.), *rev. denied* (Minn.1988). He suggests that *Duffey* is inapposite because *Duffey* dealt with a subchapter C corporation in which the retained earnings at issue had not previously been taxed to the shareholder-spouse as occurs in a subchapter S corporation.

In *Duffey*, the wife argued that the appreciation of the husband's nonmarital stock value over the course of the marriage was marital because the husband worked for some of the companies at issue. *Duffey*, 416 N.W.2d at 831. The district court determined that the work the husband had done for the corporations did not "contribute[] in any material way toward any increase in value in any of the business entities during the marriage," and the appreciation of the stock was, therefore, passive. *Id.* at 832–33. Next, the wife argued that when the husband's interests were combined with the interests of members of his family, he was a controlling shareholder and consequently had control over whether to distribute or retain corporate earnings and the retained corporate earnings were therefore marital property. *Id.* at 833. The court disagreed: "The distinguishing factor here is the retained earnings were *not* generated through the efforts of appellant or respondent. Thus, any increase in the value of [the husband's] stock due to retained earnings is nonmarital property." *Id.* The court was not persuaded by the argument that the husband had control over fund disbursement and focused instead on marital effort. Thus, it was not, as Gottsacker asserts, the corporate structure that guided the court in *Duffey;* rather, it was whether the retained earnings, as an increase in the value of the stock, could be attributed to marital effort.

Here, the district court relied on *Duffey* and held that "retained earnings * * * do not create a marital asset where the underlying stock of the spouse is non-marital, and where the husband and wife have not expended efforts to enhance the value of the non-marital stock." The court noted that Edwards had no significant role in

Edco management and therefore had no ability to force distribution of the AAA funds, and there was no assurance that the funds referenced in the AAA would ever be distributed. The court of appeals agreed that the AAA was not active appreciation because neither spouse contributed to the value of Edco and, therefore, the value of the AAA "arose from the efforts of Edco officers and employees, not through any marital efforts." *Gottsacker*, 2002 WL 31655186, at *3.

Gottsacker seeks to refute this conclusion by asserting that the AAA is active appreciation because it resulted from contributions of marital funds to discharge the yearly tax obligations, and appreciation resulting from the contribution of marital funds is "active" appreciation. Gottsacker maintains that Edwards' interest in the AAA can be attributed not to the efforts of Edco officers, but to the payment of taxes on Edco income directly allocated to Edwards, which taxes were paid with marital funds. We disagree.

The AAA is not active appreciation simply because marital funds were used to pay taxes on the undistributed subchapter S corporate income. Instead, as the court of appeals determined, the AAA is like retained corporate earnings. It is not marital income when the shareholder spouse has little to no control over whether to retain or distribute the earnings, and it is not active appreciation when no marital effort was expended to increase the value of the stock interest. Gottsacker does not dispute that Edwards had and continues to have no control over whether to distribute the funds reflected in the AAA. As both lower courts noted, Edwards may never receive those funds. Moreover, Gottsacker's arguments do not contradict the lower court's finding that no marital effort can be said to have increased the value of Edwards' interest in

Edco. Accordingly, we hold that the lower courts did not err when they concluded that Edwards' Edco AAA is nonmarital property.

### III.

Having decided that the lower courts properly characterized the AAA as nonmarital property, we must next address Gottsacker's equitable claim that he is entitled to reimbursement for taxes paid on the AAA during the marriage. Gottsacker asserts that if he is to be denied any interest in the AAA because of its nonmarital classification, equity demands that he be reimbursed for his share of the marital funds distributed by Edco to pay the taxes on the AAA funds. He claims that $2,823,248 in marital funds were used to pay these taxes and that he is entitled to reimbursement for half of those funds, or $1,411,624.

Gottsacker raised this argument for the first time in a post-trial motion to the district court. In support of his request for reimbursement, Gottsacker submitted a copy of the parties' 1998 tax returns and an unnotarized affidavit from his attorney that listed the parties' tax rates. He submits that this information would have been sufficient for the court to calculate the amount of taxes the parties paid on the AAA. Edwards responds by asserting that we should not review Gottsacker's request. She claims that because Gottsacker made this argument for the first time in a post-trial motion several months after the court issued its judgment, the claim is barred.

The district court did not address Gottsacker's equity claim directly and instead dismissed it in the catch-all paragraph, "all other motions of either Party should be denied." The court of appeals affirmed the dismissal of Gottsacker's claim on two grounds. First, it stated that the district court could have dismissed the claim on

the procedural ground that it was raised for the first time in a post-trial motion. Second, it noted that the district court "could reasonably have considered" that the Edco distributions used to discharge the tax obligation were made specifically for that purpose and were disbursed to Edwards' private account from which she wrote the IRS a personal check. Under those circumstances, the court of appeals stated, it would not have been an abuse of discretion to deny Gottsacker's claim for equitable relief.

Gottsacker asserts that the reason he failed to seek this equitable relief at trial was that he believed the status of the AAA as income "was beyond debate." We find this argument to be a bit specious given that when this litigation began, no Minnesota court had addressed the proper classification for an AAA, suggesting that the issue was ripe for debate. The court of appeals has consistently held that "[w]hen a party's post-trial motion is based on a theory of recovery not previously raised, the district court does not abuse its discretion by denying the motion." *Russell v. Fleming*, No. C1–99–599, 2000 WL 170012, *3 (Minn.App. Feb.15, 2000); *see also Clark v. Clark*, 642 N.W.2d 459, 464 n. 1 (Minn.App.2002) ("Generally, arguing an issue in a post-trial motion or on appeal, even one previously raised in the district court, on a theory other than the theory upon which that issue was initially argued to the district court precludes the district or appellate court from addressing the newly raised theory.").

■ Even if we accepted Gottsacker's arguments for why his claim is not barred, we would still conclude that the lower courts properly denied his request for relief on the ground that he failed to submit sufficient evidence to support that request. *See Noltimier v. Noltimier*, 280 Minn. 28, 29, 157 N.W.2d 530, 531 (1968) (stating that if the record is not sufficient to support review, the appeal may be dismissed). An unnotarized affidavit from a party's attorney has no evidentiary value. Therefore, in seeking this relief, Gottsacker is essentially asking that we award him over $1 million in equitable relief on the basis of little more than a copy of the parties' 1998 tax returns. We decline to do so and hold that the lower courts did not err when they denied Gottsacker's belated claim for equitable relief. Because we determine there was insufficient evidence for this claim, we need not reach the issue of whether the district court could have dismissed this claim on procedural grounds because it was raised for the first time in a post-trial motion.

## IV.

■ The final issue we address is Edwards' claim that the lower courts erred in finding that her interest in Edcoat, which was acquired with distributions from her shares in Edco, is marital property. In support of her position, Edwards argues that the current rule that income from nonmarital property is marital income is flawed. She argues that this rule favors form over substance and that the better approach would be to consider marital effort in deciding whether such income is marital, just as we do in evaluating whether appreciation of nonmarital property is marital. Here, the intent of the Edwards family was to form a separate corporation in which only Edwards family members and key management personnel would have ownership interests. If the family had attempted to accomplish this goal by making Edcoat a subsidiary of Edco, Edwards' interest would have remained nonmarital. Instead, the family chose to create Edcoat as a separate entity funded with corporate dividends and, as a result of this structural decision, Edwards' Edcoat

interests became marital property. Edwards argues that in deeming the Edcoat interests marital property, she and her family are being penalized for choosing one corporate structure over another.

In *Nardini*, we explicitly stated that cash dividends are income and, therefore, marital property. *Nardini*, 414 N.W.2d at 194. Consequently, assets acquired with that marital property are also marital property. Though the Edwards family may regret the corporate structure it chose and while the family may not have fully considered all the consequences of that structure, the district court relied on well-established law in finding that the Edco distributions to Edwards were marital income, the marital income was used to acquire Edcoat ownership interest, and that Edcoat interest is, therefore, marital property. Accordingly, we affirm the lower courts' determinations that Edwards' Edcoat interests are marital property.

Affirmed.

BLATZ, C.J., took no part in the consideration or decision of this case.