*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0655**

In re the Marriage of:
Carol Lee D'Costa, petitioner,
Respondent,

vs.

Joseph Francis D'Costa,
Appellant.

**Filed February 1, 2016
Affirmed
Kirk, Judge**

Hennepin County District Court
File No. 27-FA-13-2583

Shannon M. Fitzpatrick, Fitzpatrick Family Law, Minneapolis, Minnesota (for respondent)

Michelle L. MacDonald, MacDonald Law Firm, LLC, West St. Paul, Minnesota (for appellant)

        Considered and decided by Kirk, Presiding Judge; Stauber, Judge; and Kalitowski,

Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KIRK**, Judge

Appellant-father challenges the district court's grant of sole legal and sole physical custody to respondent-mother, arguing that chapter 518 of Minnesota Statutes unconstitutionally infringes on his fundamental right to parent his children. Minn. Stat. §§ 518.001-.68 (2014 & Supp. 2015). He also contests the district court's admission of various reports into evidence, the valuation and division of wife's investment and retirement accounts, his retroactive child-support obligation, and wife's award of attorney fees. We affirm.

## DECISION

In 2013, after 13 years of marriage, respondent-mother Carol Lee D'Costa petitioned for marital dissolution from appellant-father Joseph D'Costa. After a nine-day trial, the district court granted mother sole legal and sole physical custody, subject to husband's supervised parenting time with the parties' two minor children. On appeal, father raises numerous arguments attacking the district court's detailed and thorough 40-page memorandum, which we address in turn.

The constitutionality of a statute is a question of law that we review de novo. *Rew v. Bergstrom*, 845 N.W.2d 764, 776 (Minn. 2014) (citing *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 653 (Minn. 2012)). "Minnesota statutes are presumed constitutional and, as we have said in the past, our power to declare a statute unconstitutional must be exercised with extreme caution and only when absolutely necessary." *Hamilton v. Comm'r of Pub. Safety*, 600 N.W.2d 720, 722 (Minn. 1999). "The challenger of the constitutional

validity of a statute must meet the very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional." *Associated Builders & Contractors v. Ventura*, 610 N.W.2d 293, 299 (Minn. 2000).

Father challenges the constitutionality of various provisions of chapter 518 relating to custody as both written and as applied to him. Father argues that, as a fit parent, "Minn. Stat. § 518" impermissibly infringes on his fundamental right to parent his children. He contends that the state does not have a compelling interest in second-guessing the parenting decisions of a fit parent as to the best interests of his children. Father principally relies on *Troxel v. Granville*, 530 U.S. 57, 72, 120 S. Ct. 2054, 2063 (2000), in which a four Justice plurality of the United States Supreme Court struck down a Washington State visitation statute allowing any third party to petition for visitation rights at any time so long as it was in the best interests of the child. The Court declared that a parent's decisions concerning the care, custody, and control of his or her children is a protected fundamental right. *Id.* at 65, 120 S. Ct. at 2060.

Father's appeal is saddled with numerous procedural deficiencies that are fatal to his argument. First, father has no standing to argue that his fundamental right to parent is being violated. Before a court can exercise jurisdiction, a party must have standing. *In re Custody of D.T.R.*, 796 N.W.2d 509, 512 (Minn. 2011). The fundamental right to parent without state interference is reserved for fit parents. *See Troxel*, 530 U.S. at 68-69, 120 S. Ct. at 2061 ("[S]o long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the [s]tate to inject itself into the private realm of the family" and further question the parent's ability to make the best decisions concerning the

child's rearing). Here, the district court ruled that father was not a "fit parent."[1] Because father never challenged the district court's finding that he is an unfit parent, he does not belong to the class of parents who are afforded this fundamental right, and therefore does not have standing. Second, father did not comply with the notice requirements of Minn. R. Civ. P. 5A when he filed notice of his challenge to the Minnesota Attorney General because he did not include a timely pleading, written motion, or other paper challenging the constitutionality of chapter 518. Third, father's constitutional challenge is vague and unclear. It is not the function of the court of appeals to establish new causes of action. *Stubbs v. N. Mem'l Med. Ctr.*, 448 N.W.2d 78, 81 (Minn. App. 1989), *review denied* (Minn. Jan. 12, 1990). Chapter 518 is a complex scheme detailing the procedures for numerous issues, including marital dissolution, custody determinations, and third-party visitation. Father does not specify which particular statutes he is challenging; instead, he leaves to the district court, and this court, the task of determining the scope of constitutional relief that he is seeking.

Turning to father's substantive claim, father has failed to establish that the act is unconstitutional, and his argument is therefore unavailing. The state has a compelling interest in protecting the general welfare of a child during a marital dissolution, and the custody provisions of chapter 518 are narrowly tailored to serve a compelling state interest. *See* Minn. Stat. §§ 518.17-.185 (outlining law on custody determinations and parenting

---

[1] The district court equated "unfitness" to the legal standard for supervised parenting time as enunciated in Minn. Stat. § 518.175, subd. 1(b) (stating that the court shall restrict parenting time if it finds that it "is likely to endanger the child's physical or emotional health or impair the child's emotional development").

4

time). Generally, a biological parent such as father is presumed to be fit and suitable to care for his child, and the courts presume that the child's best interests are met by remaining in that parent's care. *In re P.T.*, 657 N.W.2d 577, 583 (Minn. App. 2003), *review denied* (Minn. Apr. 15, 2003).

> [But] [p]arental rights [] are not absolute and [should] not [] be unduly exalted and enforced to the detriment of the child's welfare and happiness. The right of parentage . . . is in the nature of a trust . . . and is subject to [parents'] correlative duty to protect and care for the child.

*In re Adoption of Anderson*, 235 Minn. 192, 200, 50 N.W.2d 278, 284 (1951). The child's best interests are the paramount consideration in a custody determination. Minn. Stat. § 518.17, subd. 1. The state also has a compelling interest in shielding children from parental abuse. *R.S. v. State*, 459 N.W.2d 680, 689 (Minn. 1990). The power of a parent may be subject to limitation if it appears that "parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens." *Wisconsin v. Yoder*, 406 U.S. 205, 233-34, 92 S. Ct. 1526, 1542 (1972); *see SooHoo v. Johnson*, 731 N.W.2d 815, 822 (Minn. 2007) (holding that the state "may intrude on parental rights in order to protect the general interest in the youth's well being") (quotation omitted)). The state has a compelling interest in protecting the general welfare of a child in a marital dissolution custody case.

Minn. Stat. §§ 518.17-.185 are narrowly tailored to serve the compelling governmental interest of protecting a child's best interest in light of a fit parent's right to parent the child. There is a rebuttable presumption, upon either parent's request, that joint legal custody is in the best interest of the child. Minn. Stat. § 518.17, subd. 1(b)(9). There

is no presumption for or against joint physical custody absent evidence of domestic abuse. *Id.*, subd. 1(b)(7). The district court "shall consider" both parents as having the capacity to develop and sustain nurturing relationships with the children. *Id.*, subd. 1(b)(3). The court must consider "the benefit to the child in maximizing parenting time with both parents and the detriment to the child in limiting parenting time with either parent." *Id.*, subd. 11(9)(10).

Father attacks the district court's issuance of a no-contact order limiting his parenting time. He argues that the no-contact order not only violated his fundamental right to parent before any findings were made regarding his fitness as a parent, but it also was overly broad in scope as it gave mother exclusive control of the children. "The failure to grant a parent an opportunity to be heard on custody issues is a denial of equal protection and due process." *Halverson ex rel. Halverson v. Taflin*, 617 N.W.2d 448, 451 (Minn. App. 2000) (citing *Stanley v. Illinois*, 405 U.S. 645, 657-58, 92 S. Ct. 1208, 1215-16 (1972)).

We are not persuaded by father's arguments as he ignores the crucial fact that father *agreed* to the no-contact order. The record demonstrates that a few weeks after mother petitioned for marital dissolution, she filed an ex parte petition for an order for protection. In lieu of a hearing on mother's ex parte petition, the parties mutually agreed to a no-contact order under which father agreed to not contact mother, to not visit the children's school or church while they were in attendance, and to supervised parenting time. Father was also represented by counsel when he agreed to the no-contact order.

6

Father next challenges the admissibility of reports compiled by a financial expert and a custody evaluator during trial, arguing that both reports are inadmissible hearsay. *See* Minn. R. Evid. 801. But father did not move for a new trial following the trial. Generally, evidentiary rulings "'are subject to appellate review only if there has been a motion for a new trial in which such matters have been assigned error.'" *In re Welfare of D.N.*, 523 N.W.2d 11, 13 (Minn. App. 1994) (quoting *Sauter v. Wasemiller*, 389 N.W.2d 200, 201 (Minn. 1986)), *review denied* (Minn. Nov. 29, 1994). Because father did not move for a new trial based on the district court's hearsay rulings, his evidentiary challenges are not properly before this court. *See id*.

Next, father disputes the district court's valuation and division of some of wife's retirement accounts, arguing that it failed to make findings regarding accrued interest and the reinvestment of dividends, which are marital property. Because father did not move for a new trial or amended findings, we review only whether the evidence supports the district court's findings and whether the findings support its conclusions of law. *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 310 (Minn. 2003). Whether property is marital or nonmarital is a legal question, which this court reviews de novo. *Gottsacker v. Gottsacker*, 664 N.W.2d 848, 852 (Minn. 2003).

The record reflects that before marriage, mother owned an AG Edwards IRA. After she married, she rolled four separate retirement accounts into her AG Edwards IRA. Through a series of bank mergers, the AG Edwards IRA was transferred over to Wells Fargo, which eventually became two rollover IRA accounts. As of July 1998, the value of the rollover IRA was $69,567. At trial, mother's financial expert testified how he traced

the growth of these rollover IRA accounts from 1998-2013 in order to determine what portion of each account was marital and nonmarital. He determined that the marital value of the two rollover IRAs was $43,253. The district court adopted the expert's valuation and awarded each party half of the marital value of the rollover IRAs.

Here, the controlling issue is whether the parties actively managed the rollover IRAs during the marriage. Any increase in the value of a nonmarital asset due to "marital effort" is "active appreciation" and therefore marital property, but passive appreciation of a nonmarital asset is considered to be nonmarital property. *Id.* at 854. The record supports the district court's conclusion that the IRA was nonmarital because neither party actively managed the rollover IRAs, received a distribution, withdrew monies, or did anything to influence the value of the stock in the IRA. "'[A]n increase in the value of nonmarital property attributable to inflation or to market forces or conditions[] retains its nonmarital character.'" *Baker v. Baker*, 753 N.W.2d 644, 650 (Minn. 2008) (quoting *Nardini v. Nardini*, 414 N.W.2d 184, 192 (Minn. 1987)).

Father disputes the district court's valuation of mother's Wells Fargo investment and annuity accounts, arguing that it failed to distinguish whether the accounts' appreciation was due to interest or dividend reinvestment. But the district court specifically determined that while the investment account was nonmarital at the time the parties married, the earnings from interest and dividends were deemed marital. Likewise, the district court did not err, as father contends, in holding that increases in mother's annuity account to be nonmarital. The annuity was funded with a regular monthly transfer from mother's investment account, a nonmarital asset, and any increase in the value of the

8

annuity was attributed solely to passive reinvestment of income and dividends. *Gottsacker*, 664 N.W.2d at 854.

Father also claims, without citing any authority, that mother's withdrawals from the investment account were used for nonmarital purposes. Again, the record clearly supports the district court's finding that mother shouldered numerous family-related expenses including paying $15,000 annually for child care alone, and father contributed relatively little to the family expenses.

For the first time on appeal, father argues that the district court denied his right to procedural due process before it found that he owed mother past child support. He asserts that he has a property interest in the money that he pays for child support, and before the district court can deprive him of that interest, he must have an opportunity to be heard and present his case. But father never raised a due-process argument concerning his child-support obligation to the district court, and therefore, it is not properly before us on appeal. "A reviewing court must generally consider only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted).

Finally, father argues that the district court abused its discretion in ordering him to pay mother's attorney fees by foregoing an $18,000 property equalizer. The record amply supports the district court's finding that "[b]ut for the conduct of [father] and his counsel (including disorganization, noncompliance with trial scheduling orders, nonresponsive and argumentative and narrative testimony, and poor trial preparation and presentation of [father's] case)," the length of the trial could have been considerably shorter. *See* Minn.

9

Stat. § 518.14, subd. 1 (allowing conduct-based attorney fees to be awarded against a party contributing to the length or expense of a proceeding).

Mother requests an award of conduct-based attorney fees to cover the costs incurred on appeal. Conduct-based fees are appropriate to award on appeal. *Roehrdanz v. Roehrdanz*, 438 N.W.2d 687, 691-92 (Minn. App. 1989), *review denied* (Minn. June 21, 1989). Based on numerous arguments procedurally barred by father that mother was forced to defend on appeal, we conclude that mother is entitled to an award of costs and attorney fees. She may file her motion for fees following the procedures outlined in Minn. R. Civ. P. 139.06.

**Affirmed.**